UNITED STATES, Appellee

v

ARGEL C. SMITH, Specialist Five, U. S. Army, Appellant

21 USCMA 264, 45 CMR 38

No. 24,339

March 24, 1972

*Stewart Pettet Davis, Esquire,* argued the cause for Appellant, Accused. With him on the brief was *Colonel George J. McCartin, Jr.*

*Captain Benjamin P. Fishburne, III,* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway,* and *Captain David E. Wilson.*

## Opinion of the Court

DARDEN, Chief Judge:

The appellant was convicted of several charges, but only one is the subject of this appeal. Ten of 13 specifications under Additional Charge I alleged that Smith possessed counterfeit United States Postal Money Orders with intent to defraud, in violation of section 472, Title 18, United States Code.[1] The remaining three specifications allege possession, with the same intent and in violation of the same Federal statute, of counterfeit Republic Money Orders, payable at the Republic National Bank of Dallas. The appellant pleaded guilty to all the charges. Whether the 13 specifications under Additional Charge I allege offenses is the question now before the Court.

---

[1] "§ 472. Uttering counterfeit obligations or securities.

"Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both." [June 25, 1948, 62 Stat 705.]

Counsel for the appellant argue that all the specifications are defective in that they do not allege, expressly or impliedly, the essential element of knowledge; that the 10 specifications involving postal money orders are additionally deficient because section 500, Title 18, United States Code,[2] supersedes section 472 for money order offenses and does not prohibit the mere possession of counterfeit money orders; and that the remaining three specifications are faulty for the additional reason that they concern the money orders of a private banking institution and are thus outside the scope of the cited code sections.

To appellate Government counsel, the allegations "wrongfully" and "with intent to defraud" in each specification impliedly charge knowing possession. Looking at the terms of both sections and to their statutory history, Government counsel find no basis for concluding that postal money orders are not "obligations" or "securities" of the United States or that one section excludes a prosecution under the other. In any event, Government counsel contend that the citation of section 472 can be regarded as surplusage and that the misconduct set forth violated part 1 or part 2 of Article 134, Uniform Code of Military Justice, 10 USC § 934.

Counsel for both sides cite many cases in support of their position. In our view, Kniess v United States, 413 F2d 752 (CA9th Cir) (1969), is the most directly in point, since it involved both of the sections we are considering here.

Kniess uttered spurious postal money orders in several states. In Washington State he was Federally indicted for having passed counterfeit " 'securities' of the United States" in violation of Title 18, United States Code, section 472. In other states he was indicted for violating section 500 by passing forged postal money orders. Ultimately, Kniess agreed to plead guilty, and all offenses were consolidated for disposition by an Arizona district court.[3] He was sentenced on each count of the Washington indictments under section 472 and on each count of the section 500 indictments in other states. He moved to vacate his sentence on the ground that section 472 did not denounce the passing and uttering of forged postal money orders. The district court denied relief and Kniess appealed.

The Court of Appeals for the Ninth Circuit compared the language of the two sections, analyzed their history, and reversed the district court. On the point of knowledge, the Court of Appeals decided that one who passes a fraudulent instrument with an intent to defraud as required under section 472 would know that his act was fraudulent:

". . . [O]ne passing a fraudulent instrument with the fraudulent intent specified in section 472 would know why his act is fraudulent. Therefore, it is not conceivable that an accused could pass a counterfeited postal order with section 472's requisite intent without awareness of at least one of the fraudulent factors specified in section 500.

---

[2] "§ 500. Money orders.
"Whoever, with intent to defraud, falsely makes, forges, counterfeits, engraves, or prints any order in imitation of or purporting to be a money order issued by the Post Office Department or Postal Service, or by any officer or employee thereof; or

.     .     .     .     .

"Whoever, with intent to defraud, passes, utters or publishes, any such forged or altered money order or postal note, knowing any material sig-

**266**

nature or indorsement thereon to be false, forged, or counterfeited, or any material alteration therein to have been falsely made; . . .

.     .     .     .     .

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both." [June 25, 1948, 62 Stat 712, as amended, August 12, 1970, Public Law 91–375, 84 Stat 777.]
[3] See Rule 40, Federal Rules of Criminal Procedure.

This being true, it is possible to infer that the knowledge required by section 500 may be equated with the fraudulent intent specified in section 472, despite the variation in terminology." [United States v Kniess, supra, at 754.]

That view is counter to the defense suggestion in the instant case that knowledge is an essential element of the offense charged and that since knowledge was not alleged, the specifications are inadequate.

The decision of the Ninth Circuit in *Kniess* also rejected the argument that money order offenses violate both section 472 and section 500, and that the Government could proceed under either. After tracing the history of the separate sections, the Court of Appeals concluded:

". . . Congress has consistently treated money order forgery as a distinct crime. The most salient feature of this separate treatment is the fact that money order forgery has always been controlled by legislation specifying less severe penalties for money order fraud than those prescribed for fraud relating to other Government securities. Indeed, since 1872, the prescribed maximum penalty of five years' confinement for such fraud has never been changed." [*Id.*, at 759.]

The *Kniess* decision also held that while the defendant was not subject to indictment under section 472, his indictments under that section could be affirmed under section 500, since all elements of that section were pleaded. Consequently, the district court was ordered to reduce each sentence imposed under the State of Washington indictments to the five-year maximum penalty prescribed under section 500.

The *Kniess* holding has several consequences for the case before us. If section 472 will not support a postal money order offense, the specifications alleging a violation of that section are defective, and although intent to defraud is synonymous with knowledge, Smith apparently did not violate section 500, because that section does not proscribe bare possession of bogus money orders. Neither section will support a conviction for possessing fraudulent Republic Money Orders, because those instruments are not Government postal orders. And because of the specific reference to the Title 18 sections in the specifications and the premise on which they were tried, we cannot disregard allegations of violating the United States Code as surplusage and affirm convictions for service-discrediting conduct under Article 134, Uniform Code of Military Justice. United States v Rowe, 13 USCMA 302, 32 CMR 302 (1962). Unlike United States v Harvey, 19 USCMA 539, 42 CMR 141 (1970), this case does not involve lesser included offenses. For these reasons, we set aside the findings of guilty as to Additional Charge I and all its specifications.

The extent to which that Charge and its specifications affected the sentence is debatable. The appellant was tried by special court-martial. The other charges permitted a sentence beyond the limits of a special court. A bad-conduct discharge, partial forfeitures for six months (reduced to three months on review), and reduction in grade constituted the original sentence. Convictions for absence without leave and for 17 false official statements are unaffected by our action. To give the appellant the benefit of any doubt, a court with sentence-assessing power should reconsider appropriateness of the sentence.

Additional Charge I and its 13 specifications are dismissed and the record of trial is returned to the Judge Advocate General of the Army. The Court of Military Review may reassess the sentence on the basis of the remaining charges.

Judges QUINN and DUNCAN concur.