UNITED STATES, Appellee

v

THOMAS F. MARKS, Private, U. S. Army

and

JERALD W. BURGETT, Private, U. S. Army, Appellants

21 USCMA 281, 45 CMR 55

No. 24,531

March 31, 1972

*James Clay Richardson, Esquire,* argued the cause for Appellants, Accused. With him on the brief were *Captain Albert J. Mainelli, Jr.,* and *Captain Leland M. Stenehjem, Jr.*

*Captain Richard A. Karre* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway,* and *Captain Richard L. Menson.*

## Opinion of the Court

DARDEN, Chief Judge:

Three related issues involving the doctrine of collateral estoppel are the subject of this grant of review.

Privates Thomas F. Marks and Jerald W. Burgett were tried together by a military judge alone, in accordance with their request. He found both guilty of two specifications alleging housebreaking and of one specification alleging the larceny of a footlocker. Marks was also found guilty of other counts involving marihuana, bribery, and an attempt to escape confinement, but our review is limited to the charges of housebreaking and larceny of the footlocker.

At trial the principal issue concerning these charges was whether collateral estoppel barred the trial. The military judge granted a defense motion to dismiss for this reason, but the convening authority overruled him, and the judge concluded that this action required that he accede to the convening authority's ruling.

Before their court-martial, both of the appellants were acquitted by a United States District Court jury after a trial on an indictment charging them

282

with stealing Government property valued at more than $100. (18 USC § 641.)

At the United States District Court trial, the prosecution relied almost completely on the testimony of Specialist Hicks in tying Marks and Burgett to the Government property[1] that had been stolen at Fort Monmouth, New Jersey. Specialist Hicks gave the jury this testimony: Marks had furnished him a pair of bolt cutters, which he kept for more than a month, and he and the two appellants agreed to steal weapons from Company F and then to sell them. On January 9, 1970, Hicks remained as a lookout in a parking lot at Fort Monmouth, where he saw Marks with the bolt cutters and Burgett with a tire iron as they entered the supply room of Company F. After about 15 minutes they returned and reported finding no pistols. Marks then suggested that they try Company D because he knew weapons were there. Hicks again functioned as a lookout and observed both appellants as they "went down into the supply room." Burgett came out in about 25 to 30 minutes and said, " 'We got them. I am going to go get the car.' " After Burgett returned with the car and went back into the supply room, Burgett and Marks came out carrying a footlocker and a blue Samsonite suitcase that they placed in the car. The following Monday Marks gave Hicks $40 and told him they would give him more when they sold the rest of the weapons.

The prosecution presented evidence that the arms room, which was a secured area inside the supply room, had been entered through use of a large cutting device, as the absence of filings excluded the likelihood that a hacksaw had been used.

A Major Rice testified that he was responsible for the weapons and he explained his procedures for keeping track of them. His report of the theft was introduced in evidence to establish which weapons had been stolen. On cross-examination, he was not certain when the weapons were stolen or that they were stolen during the break-in. A Captain Weier, the Company F commander, testified that the arms room had been broken into on the night of January 10, 1970, but that nothing was stolen. William Logan, a cook, testified that appellant Marks had once asked him to keep a pair of bolt cutters for him. And Victor Campi, a Special Agent for the Federal Bureau of Investigation, testified on the condition of the Company D supply and arms room on January 10 and described how the locks on the doors and weapons racks had been cut. He was unable to establish the time of the break-in except by hearsay evidence.

Both of the appellants testified on the merits. Both denied committing the crime. Their alibi was that at the time of the crime they were away from Fort Monmouth in connection with a vist to Marks's home in Doylestown, Pennsylvania.

The only other defense witness was a Specialist Mayr, the Company D Charge of Quarters on the night of January 9, 1970. He testified that he had observed nothing out of the ordinary at the supply and arms rooms when he made hourly security checks. He conceded, however, that after 9:30 p.m. he did no more than to shine a flashlight on the door of the supply room from a distance of about ten feet to see whether the lock was still on the door. A demonstration established that Mayr could not have determined if the lock had been cut by observing it from this distance.

The District Court judge described the issue in his instructions to the jury as "a decided conflict of the testimony given by Marks and Burgett, on the one hand, and that given by Hicks, on the other." He charged the jury that:

". . . There can be no doubt in this case that the weapons men-

---

[1] This consisted of twelve .45 caliber pistols, eight M-16 rifles, one Soviet machine gun, and one German machine gun.

tioned in the indictment were government property, and that they were stolen by some person, or persons, on or about the date set forth in the indictment."

The judge also charged the jury:

"No one actually saw the stolen weapons in possession of these defendants. There was testimony concerning a footlocker, a blue Samsonite suitcase; also there was mention of a tire iron and a boltcutter."

Specialist Hicks testified that he had pleaded guilty to an indictment for the theft of the weapons. On cross-examination he admitted to using hashish.

At the court-martial, a military judge found the appellants guilty of specifications alleging unlawful entry into the supply room of Company F, unlawful entry into the supply room of Company D, both on January 9, 1970, and larceny on the same date of a footlocker that was the property of Specialist Five Eugene E. Crocker.

Specialist Crocker testified he kept a footlocker in the supply room of Company D and that it was missing.

Again, Hicks was the principal witness for the prosecution. His testimony was substantially the same as that which he gave at the District Court trial.

A difference in the prosecution evidence at the two trials was that at the court-martial, Agent Campi was permitted to testify about a pretrial admission by Burgett that with Hicks as a lookout, Burgett and Marks broke into Companys F and D and removed a footlocker and a suitcase. The court-martial could not consider this testimony against Marks. United States v Borner, 3 USCMA 306, 12 CMR 62 (1953).

Neither of the appellants testified on the merits at the second trial, but Burgett denied making the admission attributed to him by Agent Campi.

The principle of collateral estoppel that is known in military law as *res judicata* (Manual for Courts-Martial, United States, 1969 (Revised edition),

**284**

paragraph 71*b;* United States v Smith, 4 USCMA 369, 15 CMR 369 (1954)), is concerned not with the *offenses* for which the accused was tried but with the *issues* that the first trial determined. This Court has expressed the issue in these words:

". . . [T]he question to be decided is whether, under the evidence and instructions at the first trial, a fair evaluation of human behavior compels the conclusion that the acquittal resulted from the matter again placed in issue at the second trial." [United States v Hooten, 12 USCMA 339, 342, 30 CMR 339 (1961).]

The Supreme Court has incorporated collateral estoppel into the Fifth Amendment protection against double jeopardy. Ashe v Swenson, 397 US 436, 444, 25 L Ed 2d 469, 90 S Ct 1189 (1970). The *Ashe* opinion contains this language:

". . . Where a previous judgment of acquittal was based upon a general verdict, . . . this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' "

See also Simpson v Florida, 403 US 384, 29 L Ed 2d 549, 91 S Ct 1801 (1971).

Counsel for the Government suggest two hypotheses for avoiding the application of *res judicata.* One is that the District Court jury disbelieved Hicks's testimony completely. The second hypothesis is that the civilian jury acquitted because nobody testified that the footlocker and suitcase the two appellants carried out of Company D supply room contained weapons. This

latter hypothesis is the one the Government urges that we adopt to permit the appellants to be tried for the offenses of housebreaking and larceny of the footlocker.

Applying the holding from *Hooten* and *Ashe* we must examine the record of the District Court trial, ■ consider the pleadings, evidence, charge, and other relevant information and decide whether a rational jury could have grounded its verdict on an issue other than that which the appellants seek to foreclose from consideration.

In this case the appellants seek to foreclose two issues from consideration: that they unlawfully ■ entered the supply room of Company D with intent to commit larceny and that they committed larceny by wrongfully taking a footlocker.

Our estimate is that a rational jury would have been convinced that Government property was stolen from the supply area of Company D at about the time charged in the indictment. In fact, as the quotation earlier in this opinion indicates, the judge charged the jury that there could be no doubt that Government weapons were stolen.

If the first jury wholly disbelieved Hicks, we must decide the *res judicata* issue in favor of the appellants, because in that event the jury probably believed that the appellants were away from Fort Monmouth at the time of the unlawful entry.

Can we exclude every other reasonable basis for acquittal? For the issues not to be foreclosed, the jury must have reasoned that Marks and Burgett entered the supply rooms substantially in accordance with Hicks's testimony, and that although the weapons were stolen about the same time, the footlocker and Samsonite suitcase Hicks said Marks and Burgett brought out of the supply room did not contain weapons. Another possibility is that while the jury may have believed that the footlocker and suitcase contained weapons, no witness saw the weapons themselves, and the jury could have decided the evidence failed to meet a beyond-a-reasonable-doubt standard.

While a jury undoubtedly has the power to act irrationally when it is unsympathetic toward the law it must apply, or when the jury for good or bad reasons has sympathy for a defendant, we have no reason to suspect that this District Court jury either disapproved the law against stealing Government property or that it exercised an understanding heart instead of unremitting logic in acquitting the defendants.

*Ashe,* of course, postulates a rational jury. This jury was not convinced to the requisite degree that Marks and Burgett did steal Government weapons. From the evidence, could the jury rationally have concluded that Hicks's testimony was truthful concerning his participation with the appellants in the preparation for stealing weapons, on their entering one arms room with bolt cutters and then another when the first one contained no weapons, and on their removing a footlocker but that, although Government weapons surely were stolen about the same time, the footlocker they removed did not contain the stolen weapons? We think not. We would not go so far as to characterize such a conclusion as being more whimsical than rational but we are unable to find that this was a reasonable possibility. Our opinion is that the jury must have believed the defendants' alibi.

The effect of our holding is not that a jury acts irrationally when it takes seriously its charge that the evidence must demonstrate the defendant's guilt beyond a reasonable doubt. Instead, the holding represents more our decision that Hicks's testimony was a kind that could not with reason be partially believed. It was an all or nothing approach.

Our decision on this issue results in our not reaching the related issues of whether the military judge's decision on the issue of *res judicata* presented solely a question of law and on

whether the military judge's decision on this issue amounted to a finding of not guilty and thus precluded the convening authority from returning the issue for reconsideration.

We reverse the decision of the United States Army Court of Military Review. As to appellant Burgett the charges are ordered dismissed. As to appellant Marks the specifications of Additional Charge I and the specification of Additional Charge II are ordered dismissed. The record of trial is returned to the Judge Advocate General of the Army for reference to the Court of Military Review, which may reassess the sentence of appellant Marks on the basis of the remaining charges.

Judges QUINN and DUNCAN concur.