UNITED STATES

v.

Sergeant Paul H. KOPP, FR 288–94–3087
United States Air Force.

ACM S24780.

U. S. Air Force Court of Military Review.

9 April 1980.

Appellate Counsel for the Accused: Colonel Larry G. Stephens, Colonel George R. Stevens and Major Wade B. Morrison.

Appellate Counsel for the United States: Colonel James P. Porter, Major Robert T. Mounts and Captain James R. Van Orsdol.

Before HERMAN, Senior Judge, and ARROWOOD and MILES, JJ.

## DECISION

ARROWOOD, Judge:

The accused was found guilty by a special court-martial of attempted aggravated arson; willful damage to government property by burning; willful, wrongful and unlawful writing on doors in a dormitory; and two specifications of setting off false fire alarms, in violation of Articles 80, 108, and 134, respectively, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 908, 934.

Appellate defense counsel initially contend that the violations of Article 134, Code, *supra*, do not state an offense. Put simply, the problem before us is whether the conduct described in the specifications allege the commission of acts which are palpably and directly prejudicial to good order and discipline. *United States v. Sandinsky*, 14 U.S.C.M.A. 563, 34 C.M.R. 343 (1964).

■ The first specification under Article 134, Code, *supra*, alleges that the accused willfully, wrongfully and unlawfully wrote the following language on specified doors of the described dormitory with a "magic marker": "I like your body"; "I want your tits"; "I want your beautiful"; "I want to fuck Becky"; "He did it"; "Not here"; "I'm one horny son of a bitch."

The words of criminality—wrongfully and unlawfully—serve in this instance to demonstrate the character of the accused's acts and eliminate the possibility that the acts were done with authority or as part of his duties. The profane language displayed on the doors of the dormitory rooms was clearly offensive to those occupying the rooms as well as those passing by. Placing such language upon property intended for the use and benefit of other military members individually, and the military unit as a whole, infringed upon the rights of the intended beneficiaries to use the building for legitimate purposes. We find the specification alleges the commission of an act which is palpably and directly prejudicial to the good order and discipline and states an offense under the Code, *supra*.

■ The remaining specifications under Article 134, Code, *supra*, allege the accused willfully, wrongfully and unlawfully set off a false fire alarm in Building 776. The words of criminality clearly show the accused lacked the authority to set off a false alarm. By doing so he initiated emergency action without justifiable reason for everyone in the building as well as the fire department. It resulted in considerable inconvenience to the residents and expense to the government. Such action is palpably and directly prejudicial to good order and discipline and is an offense chargeable under the Code, *supra*.

It is further contended that the military judge erred by failing to instruct the court as to the legal effect of voluntary intoxication on all the offenses charged.

■ The evidence regarding intoxication before the court members came from three sources. A sergeant who observed the accused at the door to her room did not offer an opinion as to whether he was drunk, but testified that she smelled the distinct odor of liquor in the air and thought the accused was walking peculiarly—slowly and deliberately rather than staggering. His commander, who observed him shortly after the offenses were committed, believed the accused had been drinking but was not drunk. The investigator on the scene described accused's speech and motor activity as normal, but said accused appeared tired, not drunk.

■ An instruction on voluntary intoxication should be given if there is evidence before the court members from which a reasonable man could conclude that the degree of intoxication was such that it would impair the capacity of the accused to entertain the specific intent or knowledge involved in the offenses. *United States v. Craig*, 2 U.S.C.M.A. 650, 10 C.M.R. 148 (1953). We find the evidence in this case is insufficient to raise the issue; therefore, no instruction on voluntary intoxication is warranted. *United States v. Sampson*, 7 M.J. 513 (A.C.M.R.1979).

In the fourth assignment of error, counsel contend that the military judge erred by

failing to instruct that attempted simple arson is a lesser included offense of attempted aggravated arson.

The specification in issue alleges that the accused willfully and maliciously attempted to set fire to an inhabited dormitory. The evidence shows that the accused actually set fire to a roll of tissue and a pillow on top of a water fountain in the hall of the dormitory. The damage to the building consisted of black marks on the wall and a charred place on the rug beneath the fountain.

■ A military judge has a duty to *sua sponte* instruct the members of a court-martial on the elements of all lesser included offenses included in the offense charged if there is evidence introduced from which the fact finders could reasonably infer the accused's guilt of the lesser crime. *United States v. Moore*, 12 U.S.C.M.A. 696, 31 C.M.R. 282 (1962); *United States v. Clark*, 1 U.S.C.M.A. 201, 2 C.M.R. 107 (1952). The test to determine whether an offense is reasonably raised is whether the record contains some evidence to which the court-martial may attach credit if it desired. *United States v. Evans*, 17 U.S.C.M.A. 238, 38 C.M.R. 36 (1967).

■ The elements of simple arson are contained in the offense of aggravated arson. "In aggravated arson, danger to human life is the essential element; in simple arson, it is injury to the property of another." Manual for Courts-Martial, 1969 (Rev.), paragraph 205a. Accordingly, the element included in aggravated arson which is missing from simple arson is whether the property described is an inhabited dwelling. See *United v. Duke*, 16 U.S.C.M.A. 460, 37 C.M.R. 80 (1966).

In the case at hand, the property described as the subject of the arson was a dormitory [1] in which the evidence shows the accused and other military personnel lived. We see no evidence in the record from which the court members could conclude that the property described in the specification was other than an inhabited dwelling. Therefore, we do not find the lesser offense of attempted simple arson reasonably raised by the evidence, and no instruction was required.

Appellate defense counsel also contend that the government failed to show good cause for its mid-trial severance of the attorney-client relationship between the accused and his appointed defense counsel.

The accused's trial had to be stopped during sentencing because of the illness of trial defense counsel. The record established that trial defense counsel was hospitalized as a result of the illness with the initial belief that he was suffering from a heart condition. Almost immediately the convening authority, at the military judge's request, appointed an additional defense counsel to aid the accused during the delay that resulted from the original counsel's illness. The counsel appointed represented the accused throughout the remainder of the trial.

During various Article 39(a), 10 U.S.C. § 839(a) sessions held in an attempt to reschedule the accused's trial, it was represented by both counsel that the original defense counsel would be transferred to Wilford Hall Medical Center, San Antonio, Texas, for further evaluation and testing concerning his condition. After weeks of waiting for information as to counsel's availability, the military judge was informed that the cause of the illness had not been determined and that no prognosis had been made by the hospital. At that time, after assuring himself that the new defense counsel had been provided with a transcription of the trial and afforded ample opportunity to prepare for the sentencing portion of the trial, the military judge dismissed the original defense counsel and ordered the trial to proceed.[2] The accused formally objected to proceeding without his original

---

1. The lack of intent to burn the dormitory would not reduce the offense charged to attempted simple arson, but would result in a finding of not guilty.

2. The military judge also readvised accused as to his right to individual military counsel and civilian counsel.

defense counsel, but appeared from the record to have cooperated fully with his newly appointed counsel during the remainder of the trial.

 An accused's right to be represented by defense counsel appointed in his behalf is a fundamental principle of military due process. *United States v. Catt*, 1 M.J. 41 (C.M.A.1975); *United States v. Murray*, 20 U.S.C.M.A. 61, 42 C.M.R. 253 (1970). Once a viable attorney-client relationship has been entered into, the relationship should not be severed or materially altered without showing of good cause. *United States v. Iverson*, 5 M.J. 440 (C.M.A. 1978); *United States v. Timberlake*, 22 U.S. C.M.A. 117, 46 C.M.R. 117 (1973); *United States v. Eason*, 21 U.S.C.M.A. 335, 45 C.M.R. 109 (1972); *United States v. Andrews*, 21 U.S.C.M.A. 165, 44 C.M.R. 219 (1972); *United States v. Massey*, 14 U.S.C. M.A. 486, 34 C.M.R. 226 (1964).

In *Iverson, supra,* page 445, Judge Cook, in his concurring opinion distinguishes his definition of the "good cause" standard for termination from that of Judge Perry's. He states:

> To me "good cause" means that the circumstances make termination of an existing attorney-client relationship reasonable and the termination presents no reasonably foreseeable harm to the accused. However, Judge Perry perceives it as demanding "a truly extraordinary circumstance rendering virtually impossible the continuation of the established relationship."

As an example of what he considers to be a reasonable, as opposed to an extraordinary circumstance, he refers to an earlier decision of the Court, *United States v. Andrews, supra,* where the serious illness of counsel's father was held to be a sufficient showing of good cause permitting the termination of the attorney-client relationship.

There is no question in this case that a viable attorney-client relationship existed between the accused and the original counsel. The crucial inquiry here is whether good cause to sever the relationship has been shown by the failure of counsel, due to illness, to be able to participate in the trial.

The Court of Military Appeals had the issue of illness of counsel presented to them in *United States v. Brown,* 5 M.J. 454 (C.M. A.1978), but chose to decide the case on the issue of whether or not the new counsel entered into an attorney-client relationship with the accused. The decision of the Court expressed no opinion on whether the counsel's physical location and emotional health and hospitalization for treatment of alcoholism actually made him unavailable to represent the accused in a post-trial matter. However, Judge Cook, in his dissent, stated that he agreed with the implied conclusion of the majority that the illness of military trial defense counsel justified appointment of a new lawyer.

 In the case at hand the original counsel became ill during an Article 39(a) session at the start of the sentencing portion of the trial. He expressed to the court at the time that he was in pain and could not continue. He was immediately taken to the hospital. Some two weeks later, when relieved from further participation in the case by the military judge, he was still in the hospital and no one was able to determine, when if ever, he would recover and be able to complete his representation of the accused. Under these circumstances we believe the time taken by the military judge before making the decision to continue without the original counsel was a reasonable time in which he could expect to ascertain whether or not the counsel would be able to continue with the trial. Considering the improbability that counsel would be able to return within a reasonable time and the requirements of timeliness which are inherent in any criminal justice system, we find that by applying either the reasonable or the extraordinary circumstances standard, the military judge had good cause to sever the attorney-client relationship. We find no error in his decision.

 As to the final assignment of error, it is noted that the lack of authentication of an otherwise admissible record of previous punishment under Article 15, Code, *supra,*

was waived by trial defense counsel's failure to object at trial. MCM, 1969 (Rev.), paragraph 143*b*(2)(*a*).

Accordingly, the findings of guilty and the sentence are

AFFIRMED.

HERMAN, Senior Judge, and MILES, Judge, concur.