UNITED STATES, Appellee,

v.

Douglas G. MAYO, Private, U. S. Army, Appellant.

No. 38866/AR

CM 438554/G.

U. S. Court of Military Appeals.

Jan. 18, 1982.

For Appellant: *Captain James F. Nagle* (argued); *Lieutenant Colonel John F. Lymburner, Major Charles A. Byler* (on brief); *Colonel Edward S. Adamkewicz, Jr.*

For Appellee: *Major John T. Meixell* (argued); *Colonel R. R. Boller, Major Ted B. Borek, Captain Harry J. Gruchala* (on brief).

*Opinion of the Court*

COOK, Judge:

A general court-martial convicted accused of several offenses, including communicating a bomb hoax (Additional Charge, specification 1), which was alleged as a violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. It imposed a sentence including a dishonorable discharge and confinement at hard labor for 5 years. Intermediate reviewing authorities affirmed the findings of guilty but modified the sentence by reducing the period of confinement to 3 years. We granted review to consider three issues. 9 M.J. 142 (1980).

One issue challenges the correctness of a part of the judge's instructions on reasonable doubt, to which the defense made no objection at trial. The same issue was before the Court in *United States v. Salley*, 9 M.J. 189 (C.M.A.1980). For the reasons set out in *Salley*, we decide the issue against the accused.

Another issue deals with the admission into evidence of a record of accused's punishment under Article 15, UCMJ, 10 U.S.C. § 815. We determine that issue against him on the authority of *United States v. Mack*, 9 M.J. 300 (C.M.A.1980).

The third issue concerns the legal sufficiency of the allegations of the bomb-hoax specification to allege a violation of the federal penal code provision set out in the specification and the legal consequences of a determination that it does not.

## I. Sufficiency of the Allegations to Charge a Violation of 18 U.S.C. § 844(e)

In material part, the specification reads as follows:

1. 18 U.S.C. § 844(e) reads as follows:
   Whoever, through the use of the mail, telephone, telegraph, or other instrument of commerce, willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be

In that Private E2 Douglas G. Mayo, ... did, ... maliciously convey false information. Knowing the same to be false, concerning an attempt to destroy the billets of B Company, 502d Supply and Transportation Battalion, located at Fort Hood, Texas, to the Charge of Quarters of the aforesaid billets, Sergeant William Steiner, US Army, by saying, "There is a bomb in the building, you'd better find it" or words to that effect. This is in violation of Title 18 of United States Code Section 844(e).

At trial, defense counsel moved to dismiss the specification on the ground it did not allege an essential fact required for a violation of § 844(e). He pointed out that the statute enumerates specified means of communication,[1] specifically, "mail, telephone, telegraph, or other instrument of commerce," but the specification contains no allegation as to the means of communication of the alleged bomb hoax. Assured by government counsel that he would introduce evidence to show the communication was by telephone, the trial judge denied the motion. Subsequently, the judge instructed the court members that the Government must prove, beyond a reasonable doubt, that

the accused communicated certain language to Sergeant William Steiner ... to the effect that there was a bomb located in the billets;

this communication concerned an alleged attempt to damage or destroy a building by means of an explosive device;

the information was false;

the accused knew that that information was false;

the communication was made by telephone;

the communication was made maliciously; and,

made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of an explosive shall be imprisoned for not more than five years or fined not more than $5,000, or both.

such conduct . . . [was] to the prejudice of good order and discipline in the armed forces or of such a nature as to tend to bring discredit on the armed forces.[2]

Not long after the Uniform Code became operative, this Court elucidated the general standard by which to determine the legal sufficiency of the allegations of a specification. *United States v. Sell*, 3 U.S.C.M.A. 202, 11 C.M.R. 202 (1953). The standard has endured unchanged. It is as follows:

> The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. Furthermore, when the pleadings have not been attacked prior to findings and sentence, it is enough to withstand a broadside charge that they do not state an offense, if the necessary facts appear in any form or by fair construction can be found within the terms of the specification.

*Id.* at 206, 11 C.M.R. at 206. *See* para. 87*a* (2), Manual for Courts-Martial, United States, 1969 (Revised edition).

■ A specification fatally flawed because it does not contain an allegation of fact essential to proof of the offense charged is not restored to legal life by the government's production at trial of evidence of the fact. *See United States v. Fleig*, 16 U.S.C.M.A. 444, 37 C.M.R. 64 (1966); *United States v. Fout*, 3 U.S.C.M.A. 565, 13 C.M.R. 121 (1953); *United States v. Almendarez*, 46 C.M.R. 814, 816 (A.C.M.R. 1972). Here, no language in the specification, directly or by fair implication, indicates that accused used a telephone or other means proscribed in § 844(e) to communicate the alleged bomb hoax.

We have not been referred to any authoritative judicial declaration that an allegation of the means of communication is essential to an indictment under § 844(e) in the federal civilian community. However, appellate defense counsel argue that the inference is impelled by the fact that an indictment for a violation of § 844(e) in the federal civilian courts includes such an allegation. *United States v. Fears*, 450 F.Supp. 249 (E.D.Tenn.1978). A sample specification for the military that "is based on" § 844(e) has been promulgated by the Military Justice Division, United States Army Judiciary; it requires an allegation of the means of communication. Military Judge Memorandum Number 77, Form Specification and Judge's Instructions for "Bomb Threat" and "Bomb Hoax" Cases (7 Nov. 1972), reproduced in 2 The Army Lawyer (No. 11) 26 (Nov. 1972).

■ Our own reading of § 844(e) convinces us that an allegation of one of the prescribed means of communication is essential to the legal sufficiency of a specification charging a violation of the section. Government counsel would have us imply an allegation of means from the declaration in the specification that accused's conduct "is in violation of Title 18 of United States Code Section 844(e)." The declaration implies no operative fact; it simply represents that the allegations previously made constitute a violation of § 844(e). We conclude, therefore, that an allegation of fact essential to a violation of § 844(e) is missing from the specification.

The conclusion that the specification contains insufficient allegations of fact to charge a violation of § 844(e) brings us to the next question: Must we set aside accused's conviction and dismiss the charge, or can we inquire whether any offense cog-

2. In pertinent part, Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, provides as follows:

> Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, . . . shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

nizable by a court-martial is properly pleaded?

II. Validity of a Specification Insufficiently Charging a Violation of a Cited Civilian Statute But Sufficient to Allege Conduct to the Prejudice of Good Order and Discipline

■ Generally, identification in the formal charge of the provision of law deemed violated by the conduct alleged "is immaterial" to whether the allegations of fact are legally sufficient to charge an offense. *United States v. Hutcheson*, 312 U.S. 219, 229, 61 S.Ct. 463, 464, 85 L.Ed. 788 (1941). This Court applied the general rule to military practice in *United States v. Long*, 2 U.S.C.M.A. 60, 6 C.M.R. 60 (1952). There, the specification alleged that, in violation of 18 U.S.C. § 241, as amended, the accused committed a battery upon a fellow servicewoman because she had testified as a witness at a court-martial trial. The Court determined that a court-martial did not come within the scope of the cited statute, as it was not a "court of the United States." It did not, however, dismiss the charge as the legal and necessary consequence of its determination. Instead, it examined the allegations of fact and concluded that they constituted conduct to the prejudice of good order and discipline, "an offense ... defined by Article 134." *Id.* at 66, 6 C.M.R. at 66. Noting further that proper instructions had been given to the court members, this Court affirmed the findings of guilty.

Government counsel contend that the posture of the pleadings and instructions in this case are exactly as in *Long*. They argue, therefore, that we should, as in *Long*, disregard the reference in the specification to the federal penal code, and consider whether the allegations of fact allege conduct to the prejudice of good order and discipline. However, a trio of cases bars the way to acceptance of *Long* as controlling precedent. Their obstructionary role was highlighted by *United States v. Maze*, 21 U.S.C.M.A. 260, 263, 45 C.M.R. 34, 37 (1972), which implied that *Long* had been "modified if not overruled" in the intervening years. We turn, therefore, to consider the precedential value of *Long*.

General rules often have exceptions. During the term of court following *Long*, the Court cautioned "that in unusual cases a statutory reference may be necessary to a proper understanding of ... [a] charge" laid under the "crimes and offenses not capital" clause of Article 134. *United States v. Deller*, 3 U.S.C.M.A. 409, 413, 12 C.M.R. 165, 169 (1953). A few years later, *United States v. Leach*, 7 U.S.C.M.A. 388, 22 C.M.R. 178 (1956), offered an opportunity to identify specific circumstances under which a statutory reference might "be necessary to a proper understanding of the charge." 3 U.S.C.M.A. at 413, 12 C.M.R. at 169. In *Leach*, the accused was charged with conduct alleged to be violative of a *state* statute and that "thereby" he had brought "discredit upon the military service." 7 U.S.C.M.A. at 401, 22 C.M.R. at 191. Referring to *Long*, Judge Latimer opined that the reference to the state statute could be disregarded, making it unnecessary to look to whether the allegations of fact included all essential elements of the state offense. However, Chief Judge Quinn had

> strong reservations as to whether *United States v. Long*, ... and related cases justif[ied] disregard of the allegations of a purported violation of the Arizona statute.

*Id.* at 407, 22 C.M.R. at 197. During the next term, in *United States v. Hogsett*, 8 U.S.C.M.A. 681, 686, 25 C.M.R. 185, 190 (1958), Judge Ferguson iterated the *Deller* caution, as follows (emphasis added):

> It is well-settled that if a specification sets out the essential elements of an offense it need not also specify the name or the number of the statute defining the offense, *unless the designation is necessary to a proper understanding of the charge.*

*United States v. Rowe*, 13 U.S.C.M.A. 302, 32 C.M.R. 302 (1962), provided the first instance in which the Court held that it was "not free to disregard the references" in a specification "to ... [a] state statute as surplusage and to consider the case as one"

under a provision of Article 134 other than "crimes and offenses not capital." *Id.* at 310, 32 C.M.R. at 310. *Rowe* was significantly different from all previous cases on the subject in that the accused, not the Government, sought to expunge the statutory reference. Had the accused succeeded, the allegations of fact in the specification would have appeared as "a simple disorder under Article 134" rather than as an offense that authorized imprisonment for 5 years. *Id.* at 308, 32 C.M.R. at 308. The "outset" issue before the Court, therefore, was the nature of the offense on which the accused was brought to trial. In the language of *Hogsett*, the question was whether the statutory reference was "necessary to a proper understanding of the charge." The Court concluded that it was, and as we shall observe, nothing that it said affected the *Long* rule.

The specification in *Rowe* alleged that, at the Marine Corps Air Station, Cherry Point, North Carolina, the accused "did ... violate section 20–166 of the General Statutes of the State of North Carolina." The allegations as to accused's conduct were to the effect that he, as the driver of a vehicle involved in an accident which injured his wife, had failed to obtain medical assistance for her. The proceedings at trial convinced the court "beyond question, [that] the premise on which this case was prosecuted" (*id.* at 309, 32 C.M.R. at 309) made the North Carolina statute essential to an understanding of the prosecution because it had been converted into a federal offense through the Assimilative Crimes Act, 18 U.S.C. § 13.

As already noted, without the reference to the North Carolina statute, the specification would have appeared as a simple disorder. Moreover, the accused could not reasonably have known that the criminality of his conduct and the punishment to which he was subject, if convicted, were dependent upon the provisions of a state statute, although he had engaged in that conduct while on a federal reservation. Plainly, the issue in *Rowe* was materially different from that in *Long*. In *Long* the question was whether failure to allege a fact essential to a violation of a statute referenced in the specification required, as a matter of law, dismissal of the specification or whether the statutory reference could be disregarded because the allegations of fact were otherwise legally sufficient to support a finding that accused's conduct was to the prejudice of good order and discipline or to the discredit of the armed forces. On the other hand, in *Rowe* the question was whether a statutory reference in the specification was necessary to define, and give the accused notice of, the nature of the offense charged and the punishment to which he was subject. This difference alone suggests the *Rowe* Court perceived no inconsistency between the *Long* rule and its conclusion that it was "not free to disregard the references to the state statute."

Other indications of the absence of a perceived conflict with *Long* are also evident in the *Rowe* opinion. *Long* was then the leading military case on the subject; yet the *Rowe* opinion does not mention it. Although the doctrine of *stare decisis* is not absolute, respect for it would surely have impelled the *Rowe* Court to refer to *Long* had it intended to modify or overrule it. Further, in support of its conclusion that it was "clear that this case was charged under the Assimilative Crimes Act," (*id.* at 310, 32 C.M.R. at 310) the Court cited three cases, the principal one being *United States v. Picotte*, 12 U.S.C.M.A. 196, 30 C.M.R. 196 (1961); the *Picotte* opinion cites *Long* with approval. Finally, two of the three judges who concurred unqualifiedly in the *Rowe* opinion later confirmed their commitment to the continued vitality of *Long*. Judge Quinn cited the *Long* rule in his lead opinion in *United States v. Adams*, 19 U.S.C. M.A. 75, 41 C.M.R. 75 (1969). In *United States v. Caballero*, 23 U.S.C.M.A. 304, 49 C.M.R. 594 (1975), the accused was charged with violating the crimes and other offenses provision of Article 134, but it was "clear that the ... offense was actually premised upon either clause 1 or clause 2 of" the Article. Writing for the Court, Senior Judge Ferguson said:

In view of the fact that this Court has long recognized that a mere misdesignation of the charge is of absolutely no consequence where an accused is not misled,[1] this offense will be considered as one involving only conduct to the prejudice of good order and discipline.

---

1 *See e.g., United States v. Leach*, 7 U.S.C. M.A. 388, 22 C.M.R. 178 (1956); *United States v. Ekenstram*, 7 U.S.C.M.A. 168, 21 C.M.R. 294 (1956); *United States v. Long*, 2 U.S.C.M.A. 60, 6 C.M.R. 60 (1952).

*Id.* at 305, 49 C.M.R. at 595.

Analysis of *Rowe* impels the conclusion that it neither overruled nor modified *Long*, as intimated in *Maze*. As the *Maze* opinion acknowledged, the specification it was considering had to stand or fall entirely on the allegations of fact in respect to accused's conduct since "no express reference [was made] to any offense defined by Title 18, United States Code." 21 U.S.C.M.A. at 263, 45 C.M.R. at 37. These allegations described wrongful acts constituting conduct to the prejudice of good order and discipline and proper instructions thereon had been given at trial; accordingly, the Court concluded the findings of guilty by the court-martial were sustainable.

A further aspect of the *Maze* opinion remains to be explained. *Maze's* comment on the effect of *Rowe* on the *Long* rule concluded with the citation, "Cf. *United States v. Argel C. Smith*, 21 U.S.C.M.A. 264, 4[5] C.M.R. 38 (1972)." *Id.* *Smith* was published on the same day as *Maze*. Although the *Maze* comment clouds the precedential value of *Long*, a careful reading of the *Smith* opinion impels the conclusion that it did not deprecate *Long*.

The challenged specifications in *Smith*, as in *Long*, were lodged under Article 134, and each alleged that accused's specified conduct was in violation of a designated federal statute. After determining that the conduct alleged in three of the specifications did not come within the scope of the statute and that each of the remaining specifications omitted allegation of a fact essential to a violation of the cited statute, the Court said:

And because of the specific reference to the Title 18 sections in the specifications and the premise on which they were tried, we cannot disregard allegations of violating the United States Code as surplusage and affirm convictions for service-discrediting conduct under Article 134, Uniform Code of Military Justice. *United States v. Rowe*, 13 U.S.C.M.A. 302, 32 C.M.R. 302 (1962). Unlike *United States v. Harvey*, 19 U.S.C.M.A. 539, 42 C.M.R. 141 (1970), this case does not involve lesser included offenses. For these reasons, we set aside the findings of guilty.

*United States v. Smith, supra* at 267, 45 C.M.R. at 41.

Two aspects of the *Smith* opinion manifest that the Court did not intend to repudiate the *Long* holding that a specification containing allegations of fact insufficient to establish violation of a designated statute may nonetheless be sufficient to constitute conduct to the prejudice of good order and discipline or to the discredit of the armed services. First, *Smith* reviewed extensively and with approval, *Kniess v. United States*, 413 F.2d 752 (9th Cir. 1969). In that case, the accused had been indicted and convicted for passing counterfeit securities of the United States, which had been alleged in the indictment as a violation of 18 U.S.C. § 472. On appeal, the Court of Appeals determined that the bogus money orders passed by the accused were not covered by § 472, but were within the scope of § 500. Thereupon, the Court considered "whether, despite reference to section 472, the ... indictments nevertheless alleged sufficient facts to charge a violation of section 500"; it concluded that it did. It affirmed the conviction, but remanded the case for resentencing on the basis of the "penalty ... prescribed by section 500." *Id.* at 759. This is precisely the procedure posited in *Long*.

*Smith's* second indication of the absence of a purpose to depart from *Long* is apparent in its declaration that the situation then before the Court did not involve lesser included offenses as in *United States v. Har-*

vey, 19 U.S.C.M.A. 539, 42 C.M.R. 141 (1970). Although the matter was presented in a different format, *Harvey* reached the same result as *Long* in its consideration of the legal effect of deficient allegations of fact regarding a statute cited in the specification. Indeed, the United States Army Court of Military Review has observed that *Harvey* "reaffirmed . . . [the *Long*] position." *United States v. Martin*, 50 C.M.R. 314, 316 (1975), *aff'd.*, 1 M.J. 75 (C.M.A. 1975).

Harvey was charged with a number of specifications laid under Article 134. In each, the allegations of fact regarding Harvey's conduct were said to be in violation of 18 U.S.C. § 2387. As to four of the six specifications, the court members found the accused guilty of acts constituting conduct to the prejudice of good order and discipline as a lesser included offense to that charged, as allowed by instructions of the trial judge. In his appeal to this Court, the accused contended that the offense found was not, as a matter of law, lesser included in the offense alleged. To highlight the identity between what the Court said in *Harvey* in rejecting the defense contention, and what it said in *Long*, we set out the pertinent remarks in each opinion in parallel columns.

| Long | Harvey |
|---|---|
| Counsel for petitioners have assumed that the offense charged in the specification must be limited to clause (3) of Article 134, as a "crime or offense not capital"; . . . We do not accept this argument. We are of the opinion . . . that if the facts do not prove every element of the crime set out in the criminal statutes, yet meet the requirements of clause (1) or (2), they may be alleged, prosecuted and established under one of those. Clearly, if the acts and conduct complained of are disorders to the prejudice of good order and discipline . . ., the fact that they do not establish a civilian offense does not prevent prose- | Traditionally, this Court has worn an "outsize pair of spectacles in viewing the problem of lesser included offenses." [Citation omitted] The general test is whether the specification of the offense on which the accused is arraigned" alleges fairly, and the proof raises reasonably, all elements of both crimes." . . . We turn, therefore, to consider the allegations and the reasonable inferences that can be drawn from them. [19 U.S.C.M.A. at 542, 42 C.M.R. at 144.] Since all the elements of the disloyal statement offense are reasonably included within the allegations of the offense charged, it was proper to |

| Long | Harvey |
|---|---|
| cution by the military [for the military offense]. [*Id.* at 65, 6 C.M.R. at 65.] [C]oncerning the legal effect of alleging the offense as a violation of the Federal statute . . . [t]he phrase in the specification which states "violate Title 18, Section 241, United States Code (March 4, 1909, . . ." may be deleted and a substantive offense contrary to Article 134 is sufficiently alleged. [*Id.* at 66, 6 C.M.R. at 66.] | submit that offense to the court members for their consideration. [*Id.* at 543, 42 C.M.R. at 145.] |

Although *Maze* and *Smith* generated some reservations about the continued vitality of the *Long* rule, service Courts of Military Review continued to adhere to it.[3] Senior Judge LeTarte, writing for a unanimous court in *United States v. Perkins*, 47 C.M.R. 259, 263–64 (A.F.C.M.R.1973), *pet. denied*, 22 U.S.C.M.A. 635 (1973), astutely observed that this Court's refusal in *Smith* to consider the sufficiency of the allegations to charge conduct to the prejudice of good order and discipline was attributable to the fact that "no trial consideration was given to the possibility that the offenses might constitute violations of the first two clauses of" Article 134. 47 C.M.R. at 264. Both *United States v. Long, supra* at 66–67, 71, 6 C.M.R. at 66–67, 71, and *United States v. Harvey, supra*, at 546, 42 C.M.R. at 148, point out that trial consideration of the sufficiency of the residual allegations is essential to determination of whether the sentence was assessed on the basis of the correct legal maximum. Implicit in *Smith's* declaration of doubt that the deficient specifications in issue appreciably impacted upon the sentence is the inference that the Court did not believe that a rehearing on a clause 1 or 2 offense that could be sustained was warranted. Consequently, the Court simply set aside the findings of guilty of the defective specifications and directed reassessment of the sentence on the remaining findings of guilty. *See United States v. Braxton*, 16 U.S.C.M.A. 504, 37 C.M.R. 124 (1967). We conclude that *Long* is still valid and determines the next subject of in-

---

3. *Cf. United States v. Almendarez*, 46 C.M.R. 814, 815 (A.C.M.R.1972), *pet. denied*, 22 U.S.C.M.A. 613, 46 C.M.R. 1323 (1972); *United States v. Martin*, 50 C.M.R. 314 (A.C.M.R.1975), *aff'd.*, 1 M.J. 75 (C.M.A.1975).

quiry—whether the allegations independent of that citing 18 U.S.C. § 844(e) spell out conduct to the prejudice of good order and discipline.

### III. Sufficiency of the Allegations to Charge Conduct to the Prejudice of Good Order and Discipline.

■ Appellate defense counsel contend that the specification is insufficient to charge any offense under Article 134 because it contains no allegation that accused's conduct was to the prejudice of good order and discipline.[4] In *United States v. Williams*, 8 U.S.C.M.A. 325, 24 C.M.R. 135 (1957), the Court held, regarding a specification charged under Article 134 as conduct to the prejudice of good order and discipline, that the trial judge must instruct the court members that to find the accused guilty, they must find beyond a reasonable doubt that the accused did the acts alleged and those acts constitute conduct to the prejudice of good order and discipline. The Court, however, has not held that a specification lodged under Article 134 must include an allegation that accused's conduct was to the prejudice of good order and discipline or to the discredit of the armed forces. To the contrary, in considering the sufficiency of a specification under Article of War 96,[5] the general article of the Army's predecessor code which was carried over almost verbatim into the Uniform Code as Article 134, the Court held that an allegation that accused's acts were conduct to the prejudice of good order and discipline is not required. *United States v. Marker*, 1 U.S.C.M.A. 393, 3 C.M.R. 127 (1952). Two months later, in *United States v. Herndon*, 1 U.S.C.M.A. 461, 4 C.M.R. 53 (1952), the Court upheld a specification laid under Article 134 which contained no allegation that the conduct was to the prejudice of good order and discipline.

Subsequently, the *Marker/Herndon* concept was incorporated into paragraph 213a, Manual, *supra*, and was continued in change 4 of September 1, 1980. *See* Analysis of Contents, Manual for Courts-Martial, United States, 1969 (Revised edition), para. 213a. Pertinently, paragraph 213a provides:

> The specification alleging a violation of Article 134 need not expressly allege that the conduct was a disorder or neglect, or that it was of a nature to bring discredit upon the armed forces.

Short forms of Article 134 specifications do not require an allegation as to the character of the accused's conduct. Appendix 6c, Forms 126–188; para. 213a-f, Manual, *supra*. While use of a Manual-sanctioned short form of pleading does not guarantee the legal sufficiency of a specification, *United States v. Strand*, 6 U.S.C.M.A. 297, 301, 20 C.M.R. 13, 17 (1955), the omission of this aspect of the offense has been judicially sanctioned. Consequently, this part of appellate defense counsel's attack on the specification lacks merit.

■ Looking at the allegations of the specification other than that citing 18 U.S.C. § 844(e), we conclude they are sufficient to support a charge of conduct to the prejudice of good order and discipline. A Charge of Quarters has a variety of duties and responsibilities. Prominent among them is the obligation to preserve order in and the security of the premises subject to his control. *United States v. Marks*, 21 U.S.C.M.A. 281, 45 C.M.R. 55 (1972); *United States v. Vaughn*, 15 U.S.C.M.A. 622, 36 C.M.R. 120 (1966); *United States v. Mitchell*, 6 U.S.C.M.A. 579, 20 C.M.R. 295 (1955); *United States v. Bailey*, 23 C.M.R. 862 (A.F.B.R.1957). He is the person to whom an occupant reports a crime against his person or property. *United States v. Timberlake*, 3 M.J. 840 (A.C.M.R.1977) (Cook, S. J., con-

---

**4.** Besides the provision making "crimes and offenses not capital" subject to trial by court-martial, Article 134 also prohibits "all disorders and neglects to the prejudice of good order and discipline" and "all conduct of a nature to bring discredit upon the armed forces." Apparently defense counsel disregarded the discredit provision because the alleged "misconduct . . . tran-

spired in the semi-privacy of a military reservation." *United States v. Herndon*, 1 U.S.C.M.A. 461, 464, 4 C.M.R. 53, 56 (1952). *See United States v. Caballero*, 23 U.S.C.M.A. 304, 305, 49 C.M.R. 594, 595 (1975).

**5.** 10 U.S.C. § 1568.

curring and dissenting in part); *United States v. Salisbury*, 50 C.M.R. 175 (A.C.M.R. 1975). He is likely to be the person authorized entry to the arms room during non-duty hours. *United States v. Weeks*, 15 U.S.C.M.A. 583, 36 C.M.R. 81 (1966). In short, as his title implies, he is the individual in charge. As such, he is required to provide preliminary advice as to the right to remain silent, if he questions a person whom he suspects has committed a crime. *United States v. Woods*, 22 U.S.C.M.A. 369, 47 C.M.R. 124 (1973).

In *United States v. Collier*, 23 U.S.C.M.A. 173, 48 C.M.R. 789 (1974), the Court held that a false report of a theft to a military policeman constitutes making a false official statement, in violation of Article 107, UCMJ, 10 U.S.C. § 907. Arguably, a false report to the Charge of Quarters of an imminent criminal endeavor to blow up a building in his charge qualifies as a false official statement. However, as no instructions on requisite elements of that offense were given to the court members, we pass over whether the allegations sufficiently charge a violation of Article 107.

As early as *United States v. Herndon*, *supra* at 464, 4 C.M.R. at 56, this Court approved the commentary of a leading text on military justice as to the scope of the general prohibition against "disorders and neglects," which was the language of the general article of that period.[6] In pertinent part, the commentary observed that "this comprehensive term ... included ... fraud or falsification." In *United States v. Kopp*, 9 M.J. 564 (A.F.C.M.R.1980), *pet. denied*, 9 M.J. 277 (1980), the accused was charged, among other offenses, with wrongfully setting off a false fire alarm in a residential building at an Air Force base, in violation of Article 134. On review, the accused contended that the allegations did not state an offense. In finding no merit in the contention, the court said:

> [T]he accused ... initiated emergency action without justifiable reason for everyone in the building as well as the fire department. It resulted in considerable

inconvenience to the residents and expense to the government. Such action is palpably and directly prejudicial to good order and discipline and is an offense chargeable under ... [Article 134].

*Id.* at 566.

We entertain no doubt that the malicious communication to the Charge of Quarters of a military building of information to the effect that a bomb is present in the building which is known to the communicant to be false is conduct to the prejudice of good order and discipline. As the allegations of the specification are supported by evidence, and the trial judge instructed the court members they had to find, beyond a reasonable doubt, that the accused's conduct was prejudicial to good order and discipline, the findings of guilty are unassailable. *United States v. Harvey, supra* at 541, 42 C.M.R. at 143.

## IV. Validity of the Sentence

One matter remains. During the sentencing proceedings, the trial judge instructed the court members that the maximum period of confinement for the three offenses of which the accused was found guilty was 13 years. It is apparent that the aggregate was attained by attributing 5 years' confinement to the false-bomb report, which is the confinement provided for a violation of 18 U.S.C. § 844(e). As we have determined that the allegations of the specification are insufficient to allege a violation of § 844(e), the question is what punishment is authorized for the offense the specification does allege.

Article 134 prescribes no specific punishment for a violation of any of its provisions. No punishment for the particular offense alleged and found is listed in the Table of Maximum Punishments (para. 127*c*, Manual, *supra*, Section A). In this situation, paragraph 127*c* directs inquiry into whether the offense found is "closely related" to an offense the punishment for which is listed in the table. *United States v. Blevens*, 5 U.S.C.M.A. 480, 491, 18 C.M.R. 104, 115 (1955).

---

**6.** Winthrop, *Military Law and Precedents* 722 (2d ed. 1920 Reprint).

As earlier indicated, communication of a known false report to a Charge of Quarters about a matter within his authority arguably qualifies as a false official report within the meaning of Article 107. While we need not decide the matter, the comparison points up the close relationship between that offense and the offense found. We conclude, therefore, that Article 107 qualifies as a "closely related" offense for the present purpose.

The Table of Maximum Punishments limits confinement for an Article 107 offense committed by an enlisted person of the rank of the accused to 3 months. The trial judge, therefore, erred in his instruction to the court members on the maximum period of confinement. The magnitude of his error presents a substantial risk that the court members were influenced by it. On review, the convening authority reduced the 5-year term of confinement adjudged by the court to 3 years. As the convening authority gave no independent reasons for that action, the inference is that he acted on the basis of the recommendations in the staff judge advocate's review. The staff judge advocate recommended the reduction "as a matter of clemency." Without comment, the Court of Military Review affirmed the convening authority's action. Thus, the instructional error remains unredressed. Accordingly, we reverse the decision of the United States Army Court of Military Review as to sentence. We return the record of trial to the Judge Advocate General of the Army for submission to the court for reassessment of the sentence.

Chief Judge EVERETT concurs.

FLETCHER, Judge (dissenting):

Trial defense counsel in this case requested the court to *dismiss* this specification as defective for failing to state an offense. See para. 68*b*(3), Manual for Courts-Martial, United States, 1969 (Revised edition). After being informed that the Government intended to show the alleged communication [1] was made by telephone, the military judge denied this motion. The military judge ruled "that there is sufficient information contained in the specification to inform the accused of what he is being charged with and to prohibit his trial on a subsequent complaint alleging the same violation."

The defense counsel later requested that the military judge reconsider his decision on the motion. After further argument on the necessity of alleging the elements of the offense charged, the military judge again denied the motion to dismiss. He stated:

All right, the specification alleges a specific title of the United States Code which has been violated. Now, that in my mind is sufficient to incorporate the elements of the offense of that particular statute into the specification, and because of that I am denying your motion to dismiss for a failure to allege an offense. Anything further?

D.C.: No, Your Honor.

Trial defense counsel at this time did not request the trial judge to amend this specification. Para. 69*b*, Manual, *supra*.

Defense counsel prior to trial had further recourse under paragraph 69*b* to attack this specification despite the fact that the military judge ruled that it stated an offense cognizable by court-martial. His failure to request the specification be amended to correct any perceived inartfulness or indefiniteness obviates any requirement for this Court to apply the strict standard of *United States v. Sell*, 3 U.S.C.M.A. 202, 11 C.M.R. 202 (1953). In my opinion, it is enough under such circumstances that the necessary facts appear in any form or by fair construction within the terms of the specification. *See United States v. Whyte*, 1 M.J. 163 (C.M.A.1975).

In this light, a formal defect in the alleged factual allegations may be overcome by necessary implications within the specifi-

---

1. The final portion of the specification not shown in the majority opinion is the following:

Jurisdiction attaches to the military because the communication was intended to be received in an area under exclusive military and federal control.

cation. *See United States v. Simpson*, 2 U.S.C.M.A. 493, 9 C.M.R. 123 (1953). I conclude that the particular factual allegations and the express reference to the underlying federal criminal statute fairly imply that appellant's alleged conveyance of false information was by means of an instrument of commerce as prohibited by 18 U.S.C. § 844(e). *See United States v. Bunch*, 3 U.S.C.M.A. 186, 187–88, 11 C.M.R. 186, 187–88 (1953); *United States v. Smith*, 49 C.M.R. 325, 328 (N.C.M.R.1974); *United States v. Johnson*, 48 C.M.R. 282, 285 (A.C.M.R.1974), *pet. denied*, 23 U.S.C.M.A. 605, 48 C.M.R. 1000 (1974). Although I do not condone the government's failure to allege the particular instrument of commerce employed, such a failure does not defeat the sufficiency of the specification. *United States v. Suggs*, 20 U.S.C.M.A. 196, 43 C.M.R. 36 (1970). Moreover, in view of trial counsel's response to the military judges's inquiry, it is clear that appellant was sufficiently apprised of the charge he must face. Finally, I perceive no danger to appellant in terms of double jeopardy. *Id.* at 199, 43 C.M.R. 39.

Under such circumstances, our decisions in *United States v. Fleig*, 16 U.S.C.M.A. 444, 37 C.M.R. 64 (1966), and *United States v. Sell, supra*, do not dictate setting aside this finding of guilty.