UNITED STATES, Appellee

v.

James N. FOSLER, Lance Corporal
U.S. Marine Corps, Appellant

No. 11-0149

Crim. App. No. 201000134

United States Court of Appeals for the Armed Forces

Argued May 16, 2011

Decided August 8, 2011

STUCKY, J., delivered the opinion of the Court, in which ERDMANN and RYAN, JJ., joined.  EFFRON, C.J., filed a dissenting opinion.  BAKER, J., filed a dissenting opinion.

Counsel

For Appellant:  Major Jeffrey R. Liebenguth, USMC (argued).

For Appellee:  Captain Samuel C. Moore, USMC (argued); Colonel Louis J. Puleo, USMC, and Brian K. Keller, Esq. (on brief).

Military Judge:  Moira Modzelewski

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Fosler, No. 11-0149/MC

Judge STUCKY delivered the opinion of the Court.

To establish a violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006), the government must prove beyond a reasonable doubt both that the accused engaged in certain conduct and that the conduct satisfied at least one of three listed criteria. The latter element is commonly referred to as the "terminal element" of Article 134 and the government must prove that at least one of the article's three clauses has been met: that the accused's conduct was (1) "to the prejudice of good order and discipline," (2) "of a nature to bring discredit upon the armed forces," or (3) a "crime[ or] offense[] not capital." Article 134. We hold that the Government failed to allege at least one of the three clauses either expressly or by necessary implication and that the charge and specification therefore fail to state an offense under Article 134.

I.

Contrary to his pleas, Appellant was convicted of adultery in violation of Article 134. On September 21, 2009, he was sentenced to a bad-conduct discharge, confinement for thirty days, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. On February 5, 2010, the convening authority approved the

2

sentence and, with the exception of the bad-conduct discharge, ordered it executed.  On October 28, 2010, the United States Navy-Marine Corps Court of Criminal Appeals (CCA) affirmed the findings and the sentence.  United States v. Fosler, 69 M.J. 669, 678 (N-M. Ct. Crim. App. 2010).  On February 9, 2011, this Court granted review to determine whether the charge and specification leading to Appellant's conviction for adultery in violation of Article 134 stated an offense.

## II.

While a drill instructor at the Naval Junior Reserve Officer Training Corps (NJROTC) in Rota, Spain, Appellant admitted to having sexual intercourse on December 26, 2007, with SK, a sixteen-year-old high school student enrolled in NJROTC, the daughter of an active duty Navy servicemember. The evidence demonstrated that other drill instructors and NJROTC students were aware of the sexual relations between Appellant and SK.  SK claimed that the intercourse was not consensual.

Appellant was charged with rape and aggravated sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2006), and with adultery in violation of Article 134. Appellant was ultimately acquitted of the Article 120

charges.  The charge sheet described the Article 134

allegation, the offense of conviction, as follows:

> Charge II:  VIOLATION OF THE UCMJ, ARTICLE 134
>
> Specification:  In that Lance Corporal James N.
> Fosler, U.S. Marine Corps, Marine Corps Security Force
> Regiment, on active duty, a married man, did, at or
> near Naval Station, Rota, Spain, on or about 26
> December 2007, . . . wrongfully hav[e] sexual
> intercourse with [SK], a woman not his wife.

After the end of the Government's case-in-chief, trial

defense counsel moved to dismiss the specification both

under Rule for Courts-Martial (R.C.M.) 917 (motion for a

finding of not guilty due to insufficient evidence), and

because the Government "failed to allege [the terminal

element] in the charge sheet," and therefore that the

charge and specification "fail[ed] to state an offense."

As the CCA noted, this second motion should be "considered

as a motion to dismiss under R.C.M. 907."  Fosler, 69 M.J.

at 670 n.1.

The military judge denied both motions.  Concerning

the motion to dismiss, the military judge stated that

"[t]here's no requirement that the government has to either

state [which clause of the terminal element is alleged], or

state either of them in the [s]pecification."  During the

findings phase, the military judge instructed the members

regarding clauses 1 and 2.

                              III.

     Historically, the express allegation of the terminal element of Article 134 has not been viewed as necessary. The origin of the modern Article 134, the general article, can be traced back to before the founding of the nation -- namely, the first American Articles of War in 1775.[1] William Winthrop, Military Law and Precedents 720 (2d ed. Government Printing Office 1920) (1895).  Two points can be made about jurisprudence under the general article.  First, "'conduct to the prejudice of good order and military discipline'" -- and when it was added in 1916, "conduct of a nature to bring discredit upon the armed forces" -- "[was] deemed to be involved in every specific military crime," and was therefore available as a lesser included offense (LIO) of the enumerated articles of the Articles of War and later the UCMJ.  See United States v. Foster, 40 M.J. 140, 143 (C.M.A. 1994), overruled in part by United States v. Miller, 67 M.J. 385, 389 (C.A.A.F. 2009); Winthrop, supra at 109.  As a consequence, an accused could be convicted under Article 134 as an LIO of nearly any offense charged.  As the charged offense was an enumerated article and therefore did not contain the terminal element,

---

[1] As the Articles of War were revised, the numbering of the general article has been changed.

                              5

its explicit allegation must have been considered unnecessary.  The trier of fact was nonetheless required to find that the terminal element had been proven beyond a reasonable doubt to obtain a conviction under Article 134 as an LIO.

Second, the references relied upon by practitioners did not treat the general article's terminal element as a requisite component of the charge and specification.[2]  To provide guidance to practitioners, both the Manual for Courts-Martial (MCM) and authoritative works such as Colonel Winthrop's treatise included form charges and specifications for the various articles.  See, e.g., Manual for Courts-Martial, United States app. 6c (1951 ed.); Winthrop, supra at 1010-23.  This guidance never had the force of law, but was undoubtedly relied upon in everyday practice and generally reflective of the authors' understanding of the law at the time.

With few exceptions, sample specifications provided for the general article did not indicate that the terminal element should be alleged, though the sample charges often

---

[2] To understand this point, some background information is helpful.  In military justice, a charge consists of two parts: the "charge" -- typically, a statement of the article alleged to have been violated -- and the "specification" -- the more detailed description of the conduct allegedly violative of the article.  R.C.M. 307(c)(2), (3).

suggested specific reference to the general article.  See Winthrop, supra at 1022 (suggesting that the terminal element be listed in the charge, but not in the specification, and without explicit reference to the general article); A Manual for Courts-Martial, United States Army app. 3 at 349-350B (1917 ed.) (addressing the Articles of War of 1916, with the newly enacted predecessor to the modern clause 2, and suggesting that the charge explicitly reference the general article, but that reference to the terminal element was largely unnecessary); A Manual for Courts-Martial, United States Army 254-57 (1928 ed.) (same); MCM app. 6c at 488-95 (1951 ed.) (same, as applied to Article 134 in the newly enacted UCMJ); MCM pt. IV, paras. 60-113 (2005 ed.) (same); MCM pt. IV, paras. 60-113 (2008 ed.) (same).

This Court previously approved of such practices.  See United States v. Mayo, 12 M.J. 286, 293-94 (C.M.A. 1982); United States v. Marker, 1 C.M.A. 393, 400, 3 C.M.R. 127, 134 (1952) ("[W]e find no reason for the inclusion in the specification of the words 'conduct of a nature to bring discredit upon the military service.'"); see also United States v. Smith, 39 M.J. 448, 449-51 (C.M.A. 1994) (stating that the Court had previously held that a specification did "allege the military offense of obstruction of justice

under Article 134" even though it did not expressly allege the terminal element); United States v. Wolfe, 19 M.J. 174, 175-76 & n.1 (C.M.A. 1985) (upholding an Article 134 conviction omitting express reference to the terminal element); United States v. Maze, 21 C.M.A. 260, 45 C.M.R. 34 (1972) (same); United States v. Herndon, 1 C.M.A. 461, 4 C.M.R. 53 (1952) (same).

More recent cases have required a greater degree of specificity in charging. The Supreme Court, addressing the relationship between the charged offense and permissible offenses of conviction, explained in Schmuck v. United States that the accused's constitutional right to notice "would be placed in jeopardy" if the government were "able to request an instruction on an offense whose elements were not charged in the indictment." 489 U.S. 705, 718 (1989). This concern led the Supreme Court to adopt the elements test as the appropriate method of determining whether an offense is an LIO of the charged offense -- and therefore available as an offense of conviction. This test requires that "the indictment contain[] the elements of both offenses and thereby gives notice to the defendant that he may be convicted on either charge." Id.

In a line of recent cases drawing on Schmuck, we have concluded that the historical practice of implying Article

134's terminal element in every enumerated offense was no longer permissible. See United States v. McMurrin, 70 M.J. 15, 17 (C.A.A.F. 2011); United States v. Girouard, 70 M.J. 5, 9 (C.A.A.F. 2011); United States v. Jones, 68 M.J. 465, 468 (C.A.A.F. 2010); Miller, 67 M.J. at 388-89; United States v. Medina, 66 M.J. 21, 24-25 (C.A.A.F. 2008).

The Court's holdings in this line of cases -- that an accused's "constitutional rights to notice and to not be convicted of a crime that is not an LIO of the [charged] offense" are violated when an accused is convicted of an Article 134 offense as an LIO of a non-Article 134 charged offense, see, e.g., Girouard, 70 M.J. at 10 (citing U.S. Const. amends. V, VI) -- call into question the practice of omitting the terminal element from the charge and specification. This is so because not "'all of the elements'" of the offense of conviction are "'included in the definition of the offense of which the defendant is charged.'" Id. (emphasis in original) (quoting Patterson v. New York, 432 U.S. 197, 210 (1977)).

In light of this recent case law, we must determine whether the military judge erred by denying Appellant's motion to dismiss for failure to state an offense.

IV.

The Constitution protects against conviction of uncharged offenses through the Fifth and Sixth Amendments. See Russell v. United States, 369 U.S. 749, 761 (1962). The rights at issue here include the same rights we addressed in the context of our LIO jurisprudence:

> The rights at issue in this case are constitutional in nature. The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law," U.S. Const. amend. V, and the Sixth Amendment provides that an accused shall "be informed of the nature and cause of the accusation," U.S. Const. amend. VI.

Girouard, 70 M.J. at 10; see also McMurrin, 70 M.J. at 18-19 (quoting Girouard, 70 M.J. at 10).

Applying these protections, we set aside convictions under Article 134 in the LIO context because the charges and specifications in both cases alleged a violation of an enumerated article and we could not interpret the elements of the enumerated articles to "necessarily include[]" the terminal element. See Article 79, UCMJ, 10 U.S.C. § 879 (2006); see, e.g., Jones, 68 M.J. at 473. We were compelled to reach this result in multiple cases even though we employ "normal principles of statutory construction," United States v. Alston, 69 M.J. 214, 216 (C.A.A.F. 2010) (rejecting a requirement that elements "employ identical statutory language"), because none of the

enumerated articles we examined contained elements the ordinary understanding of which could be interpreted to mean or necessarily include the concepts of prejudice to "good order and discipline" or "conduct of a nature to bring discredit upon the armed forces," Article 134; see Girouard, 70 M.J. at 9.

In the instant case, we are called upon to determine, not whether the terminal element is necessarily included in the elements of the charged offense, but whether it is necessarily implied in the charge and specification. Though the object we must construe is different -- elements versus charge and specification -- the basic question is the same:  using the appropriate interpretive tools, can the relevant statutory or, as here, charging language be interpreted to contain the terminal element such that an Article 134 conviction can be sustained?

The military is a notice pleading jurisdiction. United States v. Sell, 3 C.M.A. 202, 206, 11 C.M.R. 202, 206 (1953).  A charge and specification will be found sufficient if they, "first, contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend, and, second, enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  Hamling v. United

States, 418 U.S. 87, 117 (1974); see also United States v. Resendiz-Ponce, 549 U.S. 102, 108 (2007) (citations and quotation marks omitted); United States v. Sutton, 68 M.J. 455, 455 (C.A.A.F. 2010); United States v. Crafter, 64 M.J. 209, 211 (C.A.A.F. 2006); Sell, 3 C.M.A. at 206, 11 C.M.R. at 206.  The rules governing court-martial procedure encompass the notice requirement:  "A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication." R.C.M. 307(c)(3).

The requirement to allege every element expressly or by necessary implication ensures that a defendant understands what he must defend against:  "[A]lthough the terms Congress chose for [Article 134] are broad, . . . what is general is made specific through the language of a given specification.  The charge sheet itself gives content to that general language, thus providing the required notice of what an accused must defend against."  Jones, 68 M.J. at 472 (citing Parker v. Levy, 417 U.S. 733, 756 (1974)).  Indeed, "[n]o principle of procedural due process is more clearly established than . . . notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge."  Cole v. Arkansas, 333 U.S. 196, 201 (1948); see also Miller, 67 M.J. at 388.

12

United States v. Fosler, No. 11-0149/MC

The three clauses of Article 134 constitute "three distinct and separate parts." United States v. Frantz, 2 C.M.A. 161, 163, 7 C.M.R. 37, 39 (1953). Violation of one clause does not necessarily lead to a violation of the other clauses. For example, "disorders and neglects to the prejudice of good order and discipline" is not synonymous with "conduct of a nature to bring discredit upon the armed forces," although some conduct may support conviction under both clauses. This is particularly true of clause 3. See, e.g., United States v. Martinelli, 62 M.J. 52 (C.A.A.F. 2005) (detailing significant additional steps required to obtain a conviction under clause 3, as compared with clauses 1 and 2).

An accused must be given notice as to which clause or clauses he must defend against. As we explained in the context of a guilty plea: "[F]or the purposes of Article 134, UCMJ, it is important for the accused to know whether [the offense in question is] a crime or offense not capital under clause 3, a 'disorder or neglect' under clause 1, conduct proscribed under clause 2, or all three." Medina, 66 M.J. at 26. This requirement was based on fair notice. See id. Principles of fair notice require the same in contested cases.

13

United States v. Fosler, No. 11-0149/MC

Because the terminal element was not expressly alleged, our task is to determine whether the terminal element was necessarily implied. See R.C.M. 307(c)(3). To do so, we must interpret the text of the charge and specification. We agree with the court below that Resendiz-Ponce does not foreclose the possibility that an element could be implied. See Fosler, 69 M.J. at 675. However, in contested cases, when the charge and specification are first challenged at trial, we read the wording more narrowly and will only adopt interpretations that hew closely to the plain text.[3] Cf. United States v. Watkins, 21 M.J. 208, 209-10 (C.M.A. 1986).

The Government argues that the terminal element is implied because the specification alleged adultery, the word "wrongfully" was used, and the charge stated "Article

---

[3] Of course, not all drafting errors call a conviction into question. "'[M]inor and technical deficiencies'" are not fatal to the charge and specification, assuming they do not prejudice the accused. Russell, 369 U.S. at 763 (quoting Smith v. United States, 360 U.S. 1, 9 (1959)). Appellant's specification also suffers from just such a minor and technical deficiency, in that the specification contains an incomplete sentence; however, assuming all other requirements are met, such mistakes do not render the charge and specification deficient:

> Specification: In that [Appellant] . . . did, at or near Naval Station, Rota, Spain, on or about 26 December 2007, by wrongfully having sexual intercourse with [SK], a woman not his wife [sic].

14

United States v. Fosler, No. 11-0149/MC

134." These facts do not provide a basis, individually or together, to find that the charge and specification necessarily implied the terminal element.

An allegation of adulterous conduct cannot imply the terminal element. Article 134, if properly charged, would be constitutional as applied to Appellant's adulterous conduct because, as discussed by the Supreme Court in Levy, tradition and custom give notice to servicemembers that adulterous conduct can give rise to a violation of the UCMJ. See 417 U.S. at 746-47. But this only answers the question of whether adulterous conduct can constitutionally be criminalized under Article 134, not whether the wording of the charge and specification satisfies constitutional requirements. An accused cannot be convicted under Article 134 if the trier of fact determines only that the accused committed adultery; the trier of fact must also determine beyond a reasonable doubt that the terminal element has been satisfied. See Medina, 66 M.J. at 27. Because adultery, standing alone, does not constitute an offense under Article 134, the mere allegation that an accused has engaged in adulterous conduct cannot imply the terminal element.

---

(Emphasis added.)

15

Likewise, the word "wrongfully" cannot of itself imply the terminal element. "Wrongfully" is a word of criminality and, though our case law has been at times unclear, see United States v. Choate, 32 M.J. 423, 427 (C.M.A. 1991), words of criminality speak to mens rea and the lack of a defense or justification, not to the elements of an offense, see United States v. King, 34 M.J. 95, 97 (C.M.A. 1992); United States v. Fleig, 16 C.M.A. 444, 445, 37 C.M.R. 64, 65 (1966). Neither the word "wrongfully" nor similar words of criminality can be read to mean or be defined as, for example, a "disorder[ or] neglect[] to the prejudice of good order and discipline." Therefore, while potentially necessary -- depending on the nature of the alleged conduct -- such words do not imply the terminal element in the charge and specification.

In a contested case in which Appellant challenged the charge and specification at trial, the inclusion of "Article 134" in the charge does not imply the terminal element. The words "Article 134" do not, by definition, mean prejudicial to "good order and discipline," "of a nature to bring discredit upon the armed forces," or a "crime[ or] offense[] not capital," and we are unable to construe the words "Article 134" in the charge we now review to embrace the terminal element. See Resendiz-

16

Ponce, 549 U.S. 105-07 (explaining, in a contested case in which the accused moved to dismiss the indictment at trial, that an overt act is and has been <u>necessary</u> to and part of the definition of an "attempt"); <u>Russell</u>, 369 U.S. at 765-66; <u>Hamling</u>, 418 U.S. at 117-18; <u>cf.</u> <u>Girouard</u>, 70 M.J. at 10 (explaining the critical role of the elements of the charged offense).

These components of the charge and specification do not imply the terminal element alone or when combined.[4]

V.

The Government also argues that its desired result is compelled by the <u>MCM</u> (2008 ed.), pursuant to the President's delegated and Article II powers, and by <u>Parker v. Levy</u>.

Congress delegated to the President certain rulemaking authority under Article 36, UCMJ, 10 U.S.C. § 836 (2006), but not everything in the <u>MCM</u> represents an exercise of that authority, and the President does not have the authority to decide questions of substantive criminal law. <u>See</u> <u>Jones</u>, 68 M.J. at 472 (citing <u>Ellis v. Jacob</u>, 26 M.J.

---

[4] The deficiency in Appellant's charge and specification could not have been remedied by requesting a bill of particulars under R.C.M. 906(b)(6). A bill of particulars cannot cure a charge and specification that fail to state an offense. <u>See</u> <u>Russell</u>, 369 U.S. at 770; <u>see also</u> R.C.M. 906(b)(6), Discussion ("A bill

17

90, 92 (C.M.A. 1988)).  No article of the UCMJ states that the terminal element may be omitted.  Even if the President had the authority to do so, he has not set out any Rule for Courts-Martial or Military Rule of Evidence directing that the terminal element need not be alleged expressly or by necessary implication.  Some of the MCM is merely explanatory or hortatory.  The sample specifications and drafters' analysis are included among these categories and do not purport to be binding.  See MCM pt. I, para. 4, Discussion (2008 ed.) ("These supplementary materials do not constitute . . . official views of . . . any . . . authority of the Government of the United States, and they do not constitute rules."); MCM pt. I, para. 4, Discussion (2005 ed.); see also United States v. Mitchell, 66 M.J. 176, 179 (C.A.A.F. 2008) ("The interpretation of substantive offenses in Part IV of the Manual is not binding on the judiciary . . . .").

Because the only discussion in the MCM stating that allegation of the terminal element is not required, MCM pt. IV, para. 60.c.(6)(a) (2008 ed.); MCM pt. IV, para. 60.c.(6)(a) (2005 ed.), is not set forth as language intended to be binding, we need not decide whether any such

---

of particulars cannot be used to repair a specification which is otherwise not legally sufficient.").

18

language constitutes a proper exercise of delegated authority under Article 36 or, if not, whether the President's Article II authority would extend to such a direction.

The Government also argues that the silence of the MCM should be interpreted to constitute adoption of historical practices. However, there is no clear indication from Congress -- expressed in the text of the UCMJ or otherwise -- that it intended to do so. Moreover, such an interpretation would require us to consider whether the actions of Congress or the President contravene constitutional mandates. In light of the canon of constitutional avoidance, we decline to adopt the Government's position. See Clark v. Martinez, 543 U.S. 371, 380-81 (2005) (explaining the canon of constitutional avoidance).

One could argue that, because the Supreme Court upheld the constitutionality of Article 134 on the basis of the unique history of that article in the military, see generally Levy, 417 U.S. 733, we should also consider that history when determining whether the terminal element has been alleged by necessary implication. As noted, historically, the terminal element did not need to be clearly alleged. And, as discussed, Article 134 was

traditionally implied as an LIO of any enumerated article even though the terminal element was not listed among the elements of the charged offense.

But the Supreme Court's LIO jurisprudence has changed since Levy and so has this Court's, circumscribing the extent to which Article 134 -- and particularly its terminal element -- can be implied. "The rights at issue in this case are constitutional in nature," and the government is obligated to allege all the elements of the offense. See Girouard, 70 M.J. at 10. Moreover, Levy focused on the constitutionality of Article 134 itself, not the specific procedure of charging an Article 134 offense. See 417 U.S. at 754. It is also worth noting that, in Levy, the terminal element of Article 134 was expressly alleged. See id. at 738 n.5.

The Government must allege every element expressly or by necessary implication, including the terminal element. The Government did not expressly allege the terminal element in this case. Because Appellant made an R.C.M. 907 motion at trial, we review the language of the charge and specification more narrowly than we might at later stages. Cf. Watkins, 21 M.J. at 209-10. In this context, and in light of the changes in Article 134 jurisprudence, we do not adopt the Government's broad reading of the reference

in the charge to "Article 134."  Absent the historical gloss on the meaning of "Article 134" when that phrase exists in the charge, we are compelled to hold that the charge and specification do not allege the terminal element expressly or by necessary implication.  To the extent that prior decisions such as Mayo and Marker hold to the contrary, they are overruled.

Under principles of stare decisis, we examine "intervening events, reasonable expectations of servicemembers, and the risk of undermining public confidence in the law."  United States v. Boyett, 42 M.J. 150, 154 (C.A.A.F. 1995).  "But the doctrine does not apply when a statute, executive order, or other basis for a decision changes."  Id. (footnotes omitted); see also Agostini v. Felton, 521 U.S. 203, 235-36 (1997).  Although the dissenting opinions argue at length for the application of stare decisis, the Supreme Court has explained that "stare decisis cannot possibly be controlling when . . . the decision in question has been proved manifestly erroneous, and its underpinnings eroded, by subsequent decisions of [the Supreme] Court."  United States v. Gaudin, 515 U.S. 506, 521 (1995).

The jurisprudence of the Supreme Court and our own Court has changed.  As discussed, prior to application of

the elements test in the LIO context, it was largely

settled that Article 134 could be implied in every other

offense and was available as an LIO.  This was true even

though the language of the terminal element was not

contained within the charged offense.  But the Supreme

Court clarified the law, requiring the elements test.  See

Schmuck, 489 U.S. at 716-21.  After some delay, we applied

that law to courts-martial, holding that constitutional

notice requirements no longer permitted such broad

implication of the terminal element.  See Medina, 66 M.J.

at 24-25.  The mandates of constitutional notice

requirements superseded the long-standing practice of

implying Article 134 in other enumerated offenses, thus

substantially limiting the extent to which the terminal

element can permissibly be implied.  Stare decisis does not

require that we ignore the fact that the basis for the

historical practice of omitting the terminal element when

an Article 134 offense is charged has been substantially

eroded.  See Boyett, 42 M.J. at 154.

Therefore, because an accused must be notified which

of the three clauses he must defend against, to survive an

R.C.M. 907 motion to dismiss, the terminal element must be set forth in the charge and specification.[5]

VI.

In this case, at the end of the Government's case-in-chief, defense counsel made a motion to dismiss the specification of adultery under Charge II because the Government "failed to allege [the terminal element] in the charge sheet," and therefore "it's a failure to state an offense." This constitutes a motion to dismiss under R.C.M. 907(b)(1)(B), which may be made "at any stage of the proceedings." The military judge denied this motion.

Construing the text of the charge and specification narrowly, as we must based on the posture of the case, they fail to allege the terminal element expressly or by necessary implication. Because allegation of the terminal

---

[5] Judge Baker writes that our analysis "may as a practical matter have the effect of invalidating the text of R.C.M. 307." United States v. Fosler, __ M.J. __ (5) (C.A.A.F. 2011) (Baker, J., dissenting). We disagree; R.C.M. 307(c)(3) calls for a two-step analysis of whether a charge and specification state an offense. If the element is not expressly stated or necessarily implied, it is absent. As we state, the constitutionality of R.C.M. 307 has not been called into question by recent case law. When we read the charge and specification narrowly, as we must when an R.C.M. 907 motion is made before the end of trial, the terminal element might be alleged using words with the same meaning. See Alston, 69 M.J. at 216. That R.C.M. 307 and the Constitution permit, as a general matter, elements to be necessarily implied, does not mean that the text of every element is equally susceptible to implication consistent with constitutional notice requirements.

element is constitutionally required and the Government failed to satisfy that requirement here, the military judge's decision to deny Appellant's motion to dismiss was in error.[6]  The remedy for this erroneously denied motion to dismiss is dismissal.  See United States v. Smith, 39 M.J. 448, 452-53 (C.M.A. 1994).

VII.

Accordingly, the judgment of the United States Navy-Marine Corps Court of Criminal Appeals is reversed.  The findings of guilty and the sentence are set aside, and the charge and its specification are dismissed.

---

[6] We do not take issue with the President's ability to describe conduct, such as adultery, which might invoke a violation of Article 134.  See Jones, 68 M.J. at 472.  Nor does our holding challenge the validity, vitality, or continued relevance of Article 134.  Rather, we simply require that its elements be charged explicitly or by necessary implication, as the Constitution and the R.C.M. require.  Nothing in Levy is to the contrary.

<u>United States v. Fosler</u>, No. 11-0149/MC

EFFRON, Chief Judge (dissenting):

While serving as a drill instructor at the Naval Junior Reserve Officer Training Corps Program in Rota, Spain, Appellant engaged in sexual intercourse with a high school student in the program.  The ensuing charges included an allegation that Appellant, who was married, committed adultery with the student -- a sixteen-year-old dependent daughter of an active duty Navy servicemember -- in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006) (proscribing "all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital").

The adultery charge employed the sample specification set forth in the <u>Manual for Courts-Martial</u>.  The specification used the long-standing format for Article 134 offenses, employing wording that predates enactment of the UCMJ.

In this appeal, Appellant challenges the legality of the traditional wording of specifications under Article 134. Appellant does not challenge the ruling of the military judge regarding the legal sufficiency of the prosecution's evidence on each of the elements of the offense; nor does Appellant challenge the adequacy of the military judge's instructions to the court-martial panel on the elements of the offense.

United States v. Fosler, No. 11-0149/MC

Appellant contends on appeal that the charge should be dismissed on the theory that the standard wording for an Article 134 charge does not constitute an offense under the Uniform Code of Military Justice.  The majority opinion agrees with Appellant's contention.

Article 134 serves as a critical foundation to the maintenance of good order and discipline in the armed forces. See Parker v. Levy, 417 U.S. 733 (1974).  The majority decision calls into question the validity of every court-martial conviction that has employed the traditional specification. Trial and appellate courts will be required to reexamine Article 134 charges in pending proceedings; and further litigation is likely concerning the impact of the decision on prior convictions under Article 134.  For the reasons set forth below, I respectfully dissent.

I.  PRETRIAL AND TRIAL PROCEEDINGS

The text of the charge and its specification

The Commanding General, II Marine Expeditionary Force, Camp Lejeune, North Carolina, convened a general court-martial to consider charges against Appellant, including the following:

> Charge II:  VIOLATION OF THE UCMJ, ARTICLE 134
>
> Specification:  In that Lance Corporal James N. Fosler, U.S. Marine Corps, Marine Corps Security Force Regiment, on active duty, a married man, did, at or near Naval Station,

2

> Rota, Spain, on or about 26 December 2007, .
> . . wrongfully hav[e] sexual intercourse
> with [SK], a woman not his wife.

## The legality of the charge

The convening authority, in making the referral, acted upon the advice of his staff judge advocate (SJA).  The SJA advised the convening authority that the "specifications under the charges allege an offense under the UCMJ."  See Article 34, UCMJ, 10 U.S.C. § 834 (2006) (precluding a convening authority from referring a case for trial by general court-martial in the absence of such advice).

The SJA's advice as to the legality of the charge reflected well-established military law.  See, e.g., Manual for Courts-Martial, United States pt. IV, para. 62.f (2008 ed.) (MCM (2008 ed.)) (sample specification); Manual for Courts-Martial, United States, app. 6c., para. 127 (1969 rev. ed.) (MCM (1969 rev. ed.)) (sample specification in predecessor edition); Manual for Courts-Martial, United States, app. 6, para. 119 (1951 ed.) (sample specification in the first edition of the Manual issued following enactment of the UCMJ); Manual for Courts-Martial, U.S. Army, app. 4, para. 117 (1949 ed.) (sample specification in the Manual in force for Army proceedings during the period immediately preceding enactment of the UCMJ).

The charge, as drafted, also reflected the traditional relationship between the text of the charge and the elements of

3

this offense.  The President, in the <u>Manual for Courts-Martial</u>, set forth the following guidance concerning the elements of the offense at issue in the present appeal:

> (1) That the accused wrongfully had sexual intercourse with a certain person;
>
> (2) That, at the time, the accused or the other person was married to someone else; and
>
> (3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

<u>MCM</u> pt. IV para. 62.b (2008 ed.)  In Rule for Court-Martial (R.C.M.) 307(c)(3), which governs the drafting of charges, the President emphasized that a "specification is a plain, concise, and definite statement of the essential facts constituting the offense charged."  The President further added:  "A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication."  <u>Id.</u>

Consistent with authority to address an element "by necessary implication" rather than "expressly," the President has provided the following guidance with respect to the drafting of specifications for offenses under Article 134:

> A specification alleging a violation of Article 134 need not expressly allege that the conduct was "a disorder or neglect," that it was "of a nature to bring discredit upon the armed forces," or that it constituted "a crime or offense not

4

> capital." The same conduct may constitute a disorder or neglect to the prejudice of good order and discipline in the armed forces and at the same time be of a nature to bring discredit on the armed forces.

MCM pt. IV, para. 60.c.(6)(a) (2008 ed.); accord MCM para. 213a, (1969 rev. ed.). see MCM, Analysis of Punitive Articles app. 23 at A23-19 (2008 ed.) (citing para. 213 of the 1969 Manual as the source for the current provision).

The drafters' analysis of the 1969 Manual noted that under paragraph 213, the specification "need not expressly allege" which clause the conduct violates. Id. In support of this provision, the drafters' analysis relied upon United States v. Herndon, 1 C.M.A. 461, 4 C.M.R. 53 (1952) (affirming a conviction in which the specification did not refer to any of the three clauses within Article 134). Herndon expressly relied upon the language of the sample specification, as set forth in the 1951 Manual, and affirmed a finding that employed the language of the sample specification -- language similar in pertinent respects to the specification at issue in the present case. Herndon, 1 C.M.A. at 463-65, 4 C.M.R. at 55-57. Herndon serves as the controlling precedent in support of the validity of the guidance in the Manual. See, e.g., United States v. Mayo, 12 M.J. 286, 293 (C.M.A. 1982) (citing with approval Herndon and para. 213a).

5

The observation in Mayo, 12 M.J. at 293 -- that our Court "has not held that a specification lodged under Article 134 must include an allegation that [the] accused's conduct was to the prejudice of good order and discipline or to the discredit of the armed forces" -- underscores that the guidance in the Manual is consistent with the judicial interpretation of the UCMJ. In that context, the SJA properly advised the convening authority that the charged conduct constituted an offense under the UCMJ.

Pretrial proceedings

During the extensive consideration of pretrial motions in this case, neither party raised an issue concerning the wording of the specification. The defense did not move to make the charges more definite or for a bill of particulars under R.C.M. 906(a)(6).

The defense motion at the close of the Government's case

During the trial, the prosecution introduced evidence that Appellant was an instructor in the Naval Junior Reserve Officer Training Corps Program, that he had engaged in sexual activity with a high school student in the program, that the student was sixteen years old, and that she was the dependent of an active duty member of the Navy. After the Government presented its evidence and rested, the defense presented a motion for a finding of not guilty under R.C.M. 917, including:

> a motion as to Charge II, under Article 134, because the government has failed to show that it was prejudicial to good order and discipline, or service discrediting, and also failed to allege it in the charge sheet.  Therefore, it's a failure to state an offense.  He can't be found guilty of a crime, according to this Specification as pled.

At first, the military judge viewed the defense as offering a motion under R.C.M. 917 (requiring the military judge to enter a finding of not guilty "if the evidence is insufficient to sustain a conviction of the offense affected").  In the motion proceeding, the defense offered no explanation as to why the prosecution's evidence of sexual activity between an instructor and a student who also was a military dependent did not meet the legal sufficiency standard with respect to proof that Appellant's conduct was either prejudicial to good order and discipline or service discrediting under applicable law.  The military judge denied the motion, and Appellant has not challenged his ruling under R.C.M. 917 in the present appeal.

The defense then asked the military judge to address the defense objection that the specification did not "allege a critical element, which is prejudicial to good order and discipline, or . . . service discrediting."  The military judge responded by directing defense counsel's attention to the sample specification in the Manual for Courts-Martial.  The following dialogue ensued:

7

> MJ: Can you tell me, in what way the Specification that's currently on the charge sheet, in the case at bar, falls short of that simple specification, or are you saying that the sample specification in the Manual for Courts-Martial is, itself, is deficient in that it, like many of the 134's, does not explicitly have the terminal element of --
>
> DC: Yes, ma'am. Our argument is it should explicitly say that it's -- that under the circumstances the conduct was prejudicial to good order and discipline, or of a nature to bring discredit upon the armed forces, so that Lance Corporal Fosler would know whether that other element, one of the three elements is prejudicial to good order and discipline or service discrediting.
>
> MJ: There's no requirement that the government has to either state in the Specification which one it is, or state either of them in the Specification.
>
> DC: Yes, ma'am.
>
> MJ: The government can prove up either of them in this case. And the court finds that there is certainly evidence to survive a [motion under R.C.M.] 917 on the terminal element of conduct prejudicial to good order and discipline or service discrediting, to survive the [R.C.M.] 917 motion at this point.
>
> DC: Yes, ma'am. Thank you.

The defense offered no legal analysis in support of its objection to the wording of the specification as drafted. Likewise, the defense did not address this Court's precedent in the Herndon-Mayo line of cases approving the Manual's sample specification, nor did the defense offer any legal authority for

8

the proposition that the military judge should reject reliance on the sample specification.

Instructions

After the parties concluded their presentation of evidence on the merits, the military judge instructed the court-martial panel on every element of the offense:

> Members, looking next at Charge II and the sole Specification thereunder, the accused is charged with the offense of adultery. In order to find the accused guilty of this offense, you must be convinced, by legal and competent evidence, beyond a reasonable doubt:
>
> First, that at or near Naval Station Rota, Spain, on or about 26 December 2007, the accused wrongfully had sexual intercourse with [SK].
>
> Secondly, that at the [time, the] accused was married to another; and
>
> Thirdly, that under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces, or was of a nature to bring discredit upon the armed forces.

The military judge then explained, in detail, the meaning of the terms in the third element:

> "Conduct prejudicial to good order and discipline" is conduct that causes a reasonably direct and obvious injury to good order and discipline.
>
> "Service discrediting conduct" is conduct that tends to harm the reputation of the service, or to lower it in public esteem.

9

At that point, the military judge provided further detailed instructions on the meaning of the third element in the context of an adultery charge:

> Not every act of adultery constitutes an offense under the Uniform Code of Military Justice.  To constitute an offense, the government must prove, beyond a reasonable doubt, that the accused's adultery was either directly prejudicial to good order and discipline, or service discrediting.
>
> "Conduct prejudicial to good order and discipline" includes adultery that has an obvious and measurably divisive effect on the discipline, morale, or cohesion of a military unit or organization, or that has a clearly detrimental impact on the authority, stature, or esteem of a service member.
>
> "Service discrediting conduct" includes adultery that has a tendency, because of its open notorious nature, to bring the service into disrepute, to make it subject to public ridicule, or to lower it in public esteem.
>
> Under some circumstances, adultery may not be prejudicial to good order and discipline, but nevertheless may be service discrediting, as I've explained those terms to you.
>
> Likewise, depending on the circumstances, adultery could be prejudicial to good order and discipline, but not be service discrediting.

The military judge then added detailed guidance on the application of these instructions to the facts of the case:

> In determining whether the alleged adultery in this case is prejudicial to good order and discipline, or is of a nature to bring discredit upon the armed forces, you should

10

> consider all the facts and circumstances offered on this issue including, but not limited to, the accused's marital status, military rank, grade, or position; the impact of the adultery on a unit or organization of the accused, such as a detrimental effect on a unit or organization, morale, teamwork and efficiency; where the adultery occurred; who may have known of the adultery; and the nature, if any, of the official and personal relationship between the accused and [SK].

In the present appeal, Appellant has not challenged the adequacy of these instructions, nor has Appellant challenged the legal sufficiency of the evidence upon which the court-martial panel returned a finding of guilty on the charge of adultery.

## II. APPELLATE CONSIDERATION

The majority offers a variety of reasons for concluding that the traditional specification does not set forth an offense under the UCMJ.

### Historical perspective

The majority opinion speculates that the format of the traditional specification reflects prior jurisprudence in which Article 134 offenses were treated as included within all of the other "enumerated articles" for purposes of treatment as lesser included offenses. According to the majority, "As the charged offense was an enumerated article and therefore did not contain the terminal element [of Article 134], its explicit allegation must have been considered unnecessary." __ M.J. __ (5-6)

11

(citing United States v. Foster, 40 M.J. 140, 143 (C.M.A. 1994);
William Winthrop, Military Law and Precedents 109 (2d ed. Gov't
Printing Office 1920) (1895)). Foster contains no discussion of
historical basis of the format for Article 134 offenses, and
nothing in Winthrop suggests that the traditional format was
developed to address the relationship between greater and lesser
offenses. The majority opinion does not identify any historical
record that would justify the conclusion that the impetus for
the format of the traditional specification came from a concern
about the treatment of lesser included offenses.

Precedent

The majority opinion does not cite any case in which our
Court has held that the traditional specification fails to state
an offense under the UCMJ. After acknowledging the Herndon line
of cases upholding the traditional specification, the majority
opinion contends that the result in the present case is
compelled by our recent decisions in United States v. McMurrin,
70 M.J. 15, 17 (C.A.A.F. 2011); United States v. Girouard, 70
M.J. 5, 9 (C.A.A.F. 2011); United States v. Jones, 68 M.J. 465,
468 (C.A.A.F. 2010); United States v. Miller, 67 M.J. 385, 388-
89 (C.A.A.F. 2009); United States v. Medina, 66 M.J. 21, 24-25
(C.A.A.F. 2008). __ M.J. __ (8-9). These cases represent the
latest attempt by our Court to bring some order to consideration
of lesser included offenses -- a subject that has been the

12

subject of considerable instability in military law.  See, e.g., Gary E. Felicetti, Surviving the Multiplicity/LIO Family Vortex, Army Law, Feb. 2011, at 46, 46-48 (describing the frequent shifts in judicial doctrine prior to the current set of cases). These cases address the role of elements in ascertaining whether a purported lesser offense is included within a charged offense for purposes of Article 79, UCMJ, 10 U.S.C. § 879 (2006) (governing convictions for lesser included offenses).

The cases relied upon in the majority opinion stand for the proposition that a conviction may not be affirmed under Article 79 if the purported lesser included offense contains an element that is not necessarily included within the charged offense. These cases underscore the necessity of including all elements within the text of a charge; but that is not the primary issue in the present case.  R.C.M. 307(c)(3) specifically states that "[a] specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication."  If the specification before us does not meet that test, it is invalid irrespective of our holdings in the Medina-McMurrin line of cases.  In that regard, the primary question in the present case is whether the specification at issue necessarily included all the elements of the charged offense.

13

United States v. Fosler, No. 11-0149/MC

Alternate theories under Article 134

       The majority opinion states that "[a]n accused must be given notice as to which clause or clauses [of Article 134] he must defend against."  __ M.J. at __ (13).  The opinion cites no case in which we have held that a specification must identify a clause or clauses within Article 134 in order to state an offense under the UCMJ and survive a motion to dismiss.  The opinion relies on our recent decision in Medina, 66 M.J. at 26, but that case does not require that a specification identify the Article 134 clause under which an individual has been convicted. On the contrary, Medina expressly recognizes that an accused charged with an offense under Article 134, clause 3 (non-capital crimes and offenses) can be convicted of either a clause 1 offense (conduct prejudicial to good order and discipline) or a clause 2 offense (service discrediting conduct) even if neither is mentioned in the specification.  See id. at 26-27. Such a conviction is valid, under Medina, so long as the military judge has addressed the alternate theory through instructions in a contested case or through the plea inquiry or a pretrial agreement in a guilty plea case.  See id.  In the present case, involving a contested trial, the military judge provided detailed instructions with respect to both service discrediting conduct and conduct prejudicial to good order and discipline.

14

To the extent that an accused can demonstrate that information beyond the text of the sample specification may be necessary in a particular case, the accused may file a motion for a more definite specification or a bill of particulars under R.C.M. 906(b)(6). Such a motion, however, does not address the separate question of whether a charge must be dismissed for failure to state an offense under R.C.M. 907(b)(1)(B), but instead involves a determination as to whether relief is appropriate under R.C.M. 906(b)(6). In the present case, the defense did not move for a more definite specification or for a bill of particulars.

Words of criminality

As noted in the majority opinion, this case presents the question of whether the specification necessarily implied an element of the offense. __ M.J. at __ (14). See R.C.M. 307(c)(3). In this case, the issue is whether the traditional specification necessarily implies that the charged conduct was either prejudicial to good order and discipline or service discrediting.

The majority opinion states that "the word 'wrongfully' [in the specification] cannot of itself imply the terminal element," contending that we are compelled to dismiss the specification because "words of criminality speak to mens rea and the lack of a defense or justification, not to the elements of an offense."

United States v. Fosler, No. 11-0149/MC

__ M.J. at __ (16). In support of that proposition, the majority opinion cites United States v. King, 34 M.J. 95, 97 (C.M.A. 1992), and United States v. Fleig, 16 C.M.A. 444, 445, 37 C.M.R. 64, 65 (1966), but neither King nor Fleig compels the result in the present case. Neither case addressed the relationship between an allegation of wrongfulness and the terminal element. Indeed, both cases involved specifications that did not contain the terminal element, a circumstance that drew no attention from the Court in either case. In both cases, the Court focused on factual deficiencies in the specifications, not the terminal element. As noted by the Court of Criminal Appeals in discussing the relationship of King and Fleig to the present case:

> [T]he . . . comparison[] to other flawed specifications is inapplicable because they were all missing allegations of facts specific to the individual crimes charged. See King, 34 M.J. at 97 (allegation of marriage missing in adultery specification); . . . Fleig, [16 C.M.A. at 445-46, 37 C.M.R. at 64-65] (for a hit-and-run offense, the specification was missing fact that the vehicle the accused was driving was involved in the collision). Such factual charging omissions are not analogous to omitting the terminal element that is common to all Article 134 offenses.

United States v. Fosler, 69 M.J. 669, 675 (N-M. Ct. Crim. App. 2010) (emphasis and citations omitted).

16

The Court of Criminal Appeals then addressed the question of whether the elements of the offense were necessarily implied in the present case.  After carefully discussing our prior cases and the specification at issue in this case, the court offered the following conclusion:

> [I]f a specification does not contain the terminal element specifying that the conduct was prejudicial to good order and discipline or service discrediting, alleging the criminality of the specified conduct by use of the words "wrongful" or "unlawful" is sufficient.
>
> In the present case, the specification itself properly alleges both criminality and the acts that might be determined as prejudicial to good order and discipline or service discrediting.  The specification at issue provided notice to LCpl Fosler that while he was a married man and on active duty at Naval Station, Rota, Spain, he wrongfully had sexual intercourse with a woman not his wife.  The appellant was on notice that his conduct while a married active duty service member put him at risk of criminal liability if the conduct was service discrediting or prejudicial to good order and discipline.
>
> . . . [T]he specification here states the sexual intercourse was wrongful.  Again, "wrongful" is employed as a word of criminality, and when alleged in concert with the specified conduct, it necessarily implies the terminal element.  This is particularly true in the context of adultery, where alleging that the conduct was wrongful is required because it would normally not be a crime in civilian jurisdictions. . . . [T]he wrongfulness of the appellant's conduct in the military context is what implies prejudice to good

17

> order and discipline, service discredit, or
> both.

Id. at 676-77 (emphasis and footnote omitted).  I agree.  Our
precedent supports use of the traditional specification, and
nothing in our case law compels a contrary result.

### III.  ADHERENCE TO PRECEDENT

The present case does not require us to decide whether any
of the guidance in Part IV of the Manual establishes a binding
requirement.  Here, we are dealing with well-established
judicial precedent that predates enactment of the UCMJ.  In that
regard, the President's guidance both reflects the state of the
law, and informs the application of the rule set forth in R.C.M.
307(c)(3) regarding the treatment of elements in the drafting of
specifications.

If this were a case of first impression, the approach
suggested in the majority opinion might well provide an
appropriate ground for a decision.  We are not dealing with a
fresh case, however, but instead have a case involving long-
standing precedent under military law.

The Supreme Court has emphasized that adherence to
precedent in judicial decisions -- the doctrine of stare decisis
-- provides "the preferred course because it promotes the
evenhanded, predictable, and consistent development of legal
principles, fosters reliance on judicial decisions, and

contributes to the actual and perceived integrity of the judicial process." Payne v. Tennessee, 501 U.S. 808, 827 (1991). Relying on our precedent, the President has promulgated guidance that has governed the charging of offenses under Article 134 throughout the history of the UCMJ. Notwithstanding that reliance, the majority opinion holds that a charge that employs the traditional specification does not set forth an offense under the UCMJ. Given the significant reliance on Article 134 charges in maintaining good order and discipline in the armed forces, the majority opinion is likely to lead to extensive litigation about the impact of the decision on pending courts-martial and appellate proceedings; and the decision may well result in collateral challenges to prior convictions that relied upon the traditional specification.

In considering the application of precedent, we have observed that "[s]tare decisis is a principle of decision making, not a rule, and need not be applied when the precedent at issue is 'unworkable or . . . badly reasoned.'" United States v. Tualla, 52 M.J. 228, 231 (C.A.A.F. 2000) (omission in original) (quoting Payne, 501 U.S. at 827). In terms of workability, overturning this precedent will lead us into uncharted territory, with numerous challenges to past and present cases involving convictions under Article 134. By contrast, the procedure approved in the Herndon line of cases --

a procedure that provided Appellant with the same notice and opportunity to respond as has been provided traditionally to servicemembers charged with Article 134 offenses -- is neither unworkable nor badly reasoned.  Under these circumstances, I would adhere to precedent and affirm the decision of the Court of Criminal Appeals.

United States v. Fosler, No. 11-0149/MC

BAKER, Judge (dissenting):

I respectfully dissent for three reasons.  First, as discussed in Part I, this case presents a straightforward application of Rule for Courts-Martial (R.C.M.) 307.  The text of the specification, which referenced wrongful adulterous conduct on a date certain with a person certain, necessarily implied the terminal element of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006).  The Manual for Courts-Martial, United States (2008 ed.) (MCM) expressly states so.  Military practice consistently provides so.  And, this Court's case law has always concluded so.

Second, as discussed in Part II, the majority's opinion reaches beyond the needs of this case, and appears to put in question, if not invalidate, all Article 134, UCMJ, convictions past and present, that did not or do not include the terminal element in the specification.  While pleading the terminal element might be good practice, it is not required.  Such a sea change runs counter to the plain language of R.C.M. 307, long-standing practice, and principles of stare decisis that are particularly apt in the Article 134, UCMJ, context.  One is left to ask:  If the specification in Appellant's case does not implicitly include the terminal element, when would a specification include the terminal element by implication?

Third, as considered in Part II, the majority opinion raises more questions than it answers.  A number of critical systemic legal policy questions remain open.  What status, if any, does the Manual play in the context of Article 134, UCMJ?  What role does the Commander in Chief play, if any, in defining the Rules for Courts-Martial (R.C.M.) and the elements of Article 134, UCMJ?  Finally, has Article 134, UCMJ, lost its essential character as a predictable, and therefore fair and useful, element of military discipline?

I.

The legal question presented in this case is straightforward:  Does the specification allege every element of the charged offense expressly or by necessary implication?  In my view, the answer is yes.  The specification at issue states:

> Specification:  In that Lance Corporal James N. Fosler
> . . . a married man, did, at or near Naval Station,
> Rota, Spain, on or about 26 December 2007, . . .
> wrongfully hav[e] sexual intercourse with [SK], a
> woman not his wife.

To start with the obvious, the specification does not expressly allege either of the terminal elements for an offense under clauses 1 or 2 of Article 134, UCMJ.  Thus, the question is whether the elements of service discrediting conduct or conduct prejudicing good order and discipline are alleged by necessary

2

implication, as permitted by the text of R.C.M. 307.[1]  The answer is yes.

First, the charge alleges that Appellant violated Article 134, UCMJ.  That necessarily implies that Appellant violated either clause 1, clause 2, clause 3, or some combination of the three clauses.

Second, the specification expressly states that Appellant violated Article 134, UCMJ, on a date certain, "on or about 26 December 2007," by "having sexual intercourse with [SK], a woman not his wife."  Thus, the specification expressly states that Appellant committed adultery.

Third, the specification expressly states that Appellant engaged in this conduct "wrongfully."  Thus, his conduct was not mere adultery, but wrongful adultery in the context of the military.  As the majority itself acknowledges "wrongful" is a word of criminality.  Thus, the specification charges appellant with criminal adultery in the military and not mere adultery.

Fourth, for adultery to be criminal, "the adulterous conduct must either be directly prejudicial to good order and discipline or service discrediting."  MCM, pt. IV, para. 62.c.  That is the only manner in which adultery can be criminal under the article.  Moreover, the specification in Appellant's case is

---

[1] "A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication." R.C.M. 307(c)(3).

3

based on the sample specification provided in the Manual.[2] Thus, a specification alleging wrongful adulterous conduct under Article 134, UCMJ, necessarily implies that the conduct is service discrediting or prejudicial to good order and discipline. That is the basis on which the President has authorized its prosecution.

Finally, because the specification provides the specific date of the conduct concerned, as well as the name of the other party, Appellant was on notice as to what alleged facts in support of these elements he would be required to meet. As a result, the specification satisfied Appellant's right "to be informed of the nature and cause of the accusation." U.S. Const. amend. VI.

Nonetheless, the majority concludes that an allegation of wrongful adulterous conduct on a date certain charged under Article 134, UCMJ, does not imply that conduct is either service discrediting or prejudicial to good order and discipline. This conclusion celebrates form over substance; as surely the

---

[2] The Manual provides the following sample specification:

> In that [fill in] (personal jurisdiction data), (a married man/a married woman), did, (at/on board -- location) (subject-matter jurisdiction data, if required), on or about [fill in date or range of dates], wrongfully have sexual intercourse with [fill in name of other party], a (married) (woman/man) not (his wife) (her husband).

MCM pt. IV, para. 62.f.

constitutional principle at stake is satisfied as is the purpose behind R.C.M. 307:  fair notice to the defendant as to what he will have to defend against.

What is more, and more important from a systemic standpoint, the majority "call[s] into question the practice of omitting the terminal element from the charge and specification" in the context of Article 134, UCMJ, offenses generally. Fosler, __ M.J. at __ (9).  Posing the question, in turn places in doubt the text of R.C.M. 307, which plainly permits specifications to reference elements by necessary implication. Thus, at the very least, as the Chief Judge notes:

> Given the significant reliance on Article 134 charges in maintaining good order and discipline in the armed forces, the majority opinion is likely to lead to extensive litigation about the impact of the decision on pending courts-martial and appellate proceedings; and the decision may result in collateral challenges to prior convictions that relied upon the traditional specification.

Fosler, __ M.J. at __ (19) (Effron, C.J., dissenting).  Whether done expressly, or by implication, the new court-made standard may as a practical matter have the effect of invalidating the text of R.C.M. 307.  If the terminal element is not implied in Appellant's case, it is not clear under what conditions the terminal element might ever be implied in the context of an Article 134, UCMJ, offense.

II.

There are several additional flaws in the analysis that warrant discussion. First, the majority's analysis relies on a string of cases from the past two years that are not on point, United States v. McMurrin, 70 M.J. 15, 17 (C.A.A.F. 2011); United States v. Girouard, 70 M.J. 5, 9 (C.A.A.F. 2011); United States v. Jones, 68 M.J. 465, 468 (C.A.A.F. 2010); United States v. Miller, 67 M.J. 385, 388-89 (C.A.A.F. 2009); and United States v. Medina, 66 M.J. 21, 24-25 (C.A.A.F. 2008). These cases address Article 134, UCMJ, but they do not address R.C.M. 307 or fair notice of the terminal element for offenses charged under Article 134, UCMJ. The first four cases address lesser included offenses. The latter case is about the right of defendants to know what offense they are pleading to at the time they plead, thus barring an appellate court from affirming a plea to a distinct offense after the fact and while a case is on appeal. Nor do the heightened notice standards applicable to guilty pleas or lesser included offense instructions address the same constitutional concerns as the notice pleading standard applicable to specifications -- until now. The majority compares apples to oranges. There are no double jeopardy concerns, for example, created by implying the terminal element of Article 134, UCMJ, that would necessitate the same notice standard as the guilty plea and lesser included offense cases.

6

In short, these cases do not address whether a specification under Article 134, UCMJ, is or is not constitutionally sufficient to state an offense.

Second, the majority's analysis ignores long-standing military practice as well as the principles embedded in the doctrine of stare decisis, which are particularly relevant in light of this continuous military practice. Indeed, as the Chief Judge documents, the majority whistles past sixty years of precedent and many more of continuous and consistent practice by calling it "historical." Fosler, __ M.J. __ at __ (22). However, we should be clear. What the majority dubs "historical" is the current, consistent, and continuous everyday practice in the military. It is consistent with the Manual. It is consistent with this Court's precedent. And, it is reflected in the forty-five trailer cases currently pending resolution of this case. The number is growing. In such a context, the principle of stare decisis would seem particularly suited.

As the Court has stated, the doctrine of stare decisis is "the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." United States v. Rorie, 58 M.J. 399, 406 (C.A.A.F. 2003) (quoting Payne v. Tennessee, 501 U.S. 808, 827, (1991)). Stare decisis is a

7

principle of decision making and need not be applied when the precedent at issue is unworkable or badly reasoned.  United States v. Tualla, 52 M.J. 228, 231 (C.A.A.F. 2000).  "As a general matter, however, adhering to precedent is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right."  Id. (citation and quotation marks omitted).  In this case, the law is both settled and settled correctly.

During its first term, this Court was presented the question before the Court today:  was it necessary to plead the so-called terminal element of then Article 96 of the Articles of War.  In United States v. Marker, 1 C.M.A. 393, 3 C.M.R. 127 (1951), the accused, a civilian, stood convicted of three specifications alleging wrongful acceptance of unlawful gifts of clothing, payments, and a house from a tire company in Japan.  Upholding the convictions, this Court held:

> [W]e find no reason for the inclusion in the specifications of the words "conduct of a nature to bring discredit upon the military service."  In truth, we believe the suggested language to be nothing more than traditionally permissible surplusage in specifications laid under Article of War 96, supra.  Its use therein can add nothing of legal effect to an allegation of conduct not of such a discrediting nature -- and its omission detracts not at all from conduct which clearly is.[3]

---

[3] It should be noted that the term "surplusage" appears to refer to the necessity for including the language in the specification and was not intended to suggest that the language in the statute itself was unnecessary.

Marker, 1 C.M.A. at 400, 3 C.M.R. at 134.  The Court's reasoning

rested on the principle set forth in Hagner v. United States,

285 U.S. 427, 431 (1932).  It retains its vitality today.

> The true test of the sufficiency of an indictment is not
> whether it could have been more definite or certain, but
> whether it contains the elements of the offenses intended
> to be charged.  If the indictment informs the accused of
> what he must be prepared to meet, and is sufficiently
> definite to eliminate the danger of future jeopardy, it
> will be held sufficient.

Marker, 1 C.M.A at 400, 3 C.M.R. at 134.  This Court concluded

that the specifications at issue in Marker met these criteria.[4]

Two months later in United States v. Herndon, 1 C.M.A. 461, 4

C.M.R. 53 (1952), the Court considered whether or not a

specification alleging receipt of stolen property under Article

134, UCMJ, stated an offense.  Importantly, the specification

failed to allege the terminal element.  Although the issue

presented for review was slightly different, the Court cited

Marker in holding that "the specification . . . herein is not

fatally defective, but instead alleges properly an offense under

Article 134."  Herndon, 1 C.M.A. at 465, 4 C.M.R. at 57.

This practice continued apace until the issue returned on

appeal thirty years later in United States v. Mayo, 12 M.J. 286

(C.M.A. 1982).  There, the appellant was convicted under Article

---

[4] While true, the Court in Marker was analyzing Article of War
96, it is beyond dispute that the language of that article
ultimately became the very language of Article 134, UCMJ.

134, UCMJ, for communicating a bomb hoax.  Mayo contended that
the specification was insufficient under Article 134, UCMJ,
because it did not allege that the accused's conduct was to the
prejudice of good order and discipline.  Id. at 293.  Citing
Marker and Herndon, this Court summarily disposed of Mayo's
contention stating, "Short forms of Article 134 specifications
do not require an allegation as to the character of the
accused's conduct."  Id.

Today, thirty years since Mayo, the Court jettisons this
precedent.  However, there is nothing in the record that
indicates long-standing practice and law in this area is
unworkable, badly reasoned, or unfair.  In point of fact, the
enduring nature of these precedents, which have gone
unchallenged, suggests that this customary practice has and
continues to be quite workable.  This Court's recent reversal of
long-standing precedent in the area of Article 134, UCMJ, lesser
included offenses does not demonstrate otherwise.  Those cases
addressed the issue of whether the terminal element in Article
134, UCMJ, could be implied in specifications alleging
violations of the enumerated offenses.  The issue here is
distinct; can the terminal element of Article 134, UCMJ, be
implied in the context of a specification alleging an Article
134, UCMJ, offense, where the President has provided in the

10

Manual that the alleged misconduct can only be charged under Article 134, UCMJ.

The majority's holding also contradicts long-standing precedent concerning the sufficiency of a specification generally.  In United States v. Sell, 3 C.M.A. 202, 11 C.M.R. 202 (1953), notwithstanding its citation to the Hagner language in earlier cases, the Court nonetheless felt there was still uncertainty in the military justice system as to the test to be applied.  3 C.M.A. at 206, 11 C.M.R. at 206.  The Court took the language in Hagner, expanded upon it and announced the following:

> The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

Id.  In United States v. Fout, 3 C.M.A. 565, 568, 13 C.M.R. 121, 124 (1953) (overruled on other grounds by United States v. Watkins, 21 M.J. 208 (1986)), the Court refined this standard stating, "Every essential element of the offense sought to be charged must be alleged directly or by clear implication in the specification."  These cases are the bedrock upon which military practice and R.C.M. 307(c)(3) rest.  "A specification is

11

sufficient if it alleges every element of the charged offense

expressly or by necessary implication."

The majority's conclusion also runs counter to case law

regarding words of criminality in determining the sufficiency of

a specification. A specification is sufficient to allege an

offense if "it contains the elements of the offense intended to

be charged, including words importing criminality or an

allegation as to intent or state of mind where this is

necessary." United States v. Tindoll, 16 C.M.A. 194, 195, 36

C.M.R. 350, 351 (1966). "[A]lthough addition of words of

criminality . . . cannot make criminal acts which obviously are

not, . . . [the] allegation serves to demonstrate the proscribed

character of accused's act."[5] United States v. Sadinsky, 14

C.M.A. 563, 565, 34 C.M.R 343, 345 (1964). In Sadinsky, the

accused was convicted of "wrongfully and unlawfully" jumping

_____

[5] The majority's citation of United States v. King, 34 M.J. 95,
97 (C.M.A. 1992), and United States v. Fleig, 16 C.M.A. 444,
445, 37 C.M.R. 64, 65 (1966), for the proposition that words of
criminality do not speak to the elements of the offense is
somewhat dubious. Fosler, __ M.J. __ at __ (16). The adultery
specification in King did not allege the language of the
terminal element, but that was not the basis for the Court's
conclusion that it failed to state an offense. The problem
there was that although wrongfulness was alleged, the
specification failed to allege that the accused or the other
person was married -- an essential element of adultery and the
essence of the offense itself. Likewise, in Fleig, a
specification purporting to charge the accused with fleeing the
scene of a accident failed to state that the accused's vehicle
had been in the accident. In both cases, words of criminality
alone could not make criminal acts which obviously were not.

from his ship while it was underway.  14 C.M.A. at 564, 34 C.M.R. at 343.  The Court noted that "the pleading makes clear that accused did not, under unusual circumstances, jump overboard in the course of his legitimate duties as, possibly, to rescue a shipmate, or for some other purpose which might be completely innocent."  14 C.M.A. at 465, 34 C.M.R. at 345.  The Court stated that the critical inquiry for this clause 1 offense was "whether the act was palpably and directly prejudicial to the good order and discipline of the service" and that "such an allegation need not be made in a specification laid under the General Article."  14 C.M.A. at 566, 34 C.M.R. at 346.

Here, the specification was pleaded under Article 134, UCMJ, and alleged that a married man wrongfully engaged in sexual intercourse with a woman not his wife.  This Court has long accepted the traditional meaning of the term wrongful:

> That the word [wrongful] has a well-defined meaning when used in criminal statutes is supported by Webster, who defines it as doing a thing "in a wrong manner; unjustly; in a manner contrary to moral lay [sic] or justice."  The word "wrongful" . . . when used in criminal statutes, implies a perverted evil mind in the doer of the act.  The word "wrongful" implies the opposite of right.

United States v. West, 15 C.M.A. 3, 7, 34 C.M.R. 449, 453 (C.M.A. 1964); see United States v. Barner, 56 M.J. 131, 136 (C.A.A.F. 2001) (a wrongful act is "one done without legal justification or with some sinister purpose"); accord United States v. Reeves, 61 M.J. 108, 111 (C.A.A.F. 2005).

Outside the military context, words of criminality alone might not provide such notice. In the military, however, not all adultery is or should be criminalized. The Manual for Courts-Martial contains a relatively lengthy list of factors to be considered in determining when such conduct is prejudicial to good order and discipline or service discrediting. MCM pt. IV, para. 62.c.2. In the military, the offense of adultery can only be prosecuted if it offends good order and discipline or is service discrediting. Thus, this specification was more than sufficient to meet the constitutional requirement.

And what of other offenses traditionally charged under Article 134, UCMJ? For instance, in the absence of language setting forth the terminal element of Article 134, UCMJ, can one charged with willfully and wrongfully seizing a person and holding him against his will reasonably assert that he is not on notice that the prosecution intends to proceed against him for kidnapping? See MCM pt. IV, para. 92. Furthermore, could one credibly claim, in the case of kidnapping, that he is not sufficiently apprised that such conduct is prejudicial to good order or service discrediting?

Finally, the majority appears to conflate the requirement that a specification state an offense with an accused's right to more specificity in the allegation. The majority takes the position that the specification was constitutionally deficient

14

because it failed to inform the accused as to which theory of liability contained in the terminal element the Government intended to pursue.  An accused does have a right to know under what statutory theory the government is proceeding against him in those instances where the statute provides alternative ways it can be violated.  However, there is no constitutional requirement that the specification set forth such theories as long as the specification otherwise meets the test for sufficiency.  Here, as recounted in Part I, the specification clearly indicated that the Government was proceeding on a theory that Appellant's conduct was service discrediting and/or undermined good order and discipline.  The law is "not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged." Hagner, 285 U.S. at 431.  If there are several means of committing the offense contained in the statute, the accused has a right to have the specification made more definite.  State v. Campbell, 06-0286, pp. 93-94 (La. 05/21/08); 983 So. 2d 810, 870 (in murder case "a defendant may procure details as to the statutory method by which he committed the offense through a bill of particulars"); People v. Ingersoll, 506 P.2d 364, 365 (Colo. 1973) (in felony theft case, where offense charged may be committed in alternative ways, defendant may require prosecution to state particular manner in which he committed offense by

15

filing motion for bill of particulars); accord State v. Carbone,

374 A.2d 215, 224 (Conn. 1977).  Like other jurisdictions, the

military justice system provides a remedy if the accused

requires more specificity in the allegation, assuming, as in

this case, the specification is sufficient to allege an offense.

R.C.M. 906(b)(6) allows an accused to move for appropriate

relief in the form of a bill of particulars.  The purpose of a

bill of particulars is:

> to inform the accused of the nature of the charge with
> sufficient precision to enable the accused to prepare for
> trial, to avoid or minimize the danger of surprise at the
> time of trial, and to enable the accused to plead the
> acquittal or conviction in bar of another prosecution for
> the same offense when the specification itself is too vague
> and indefinite for such purposes.

United States v. Williams, 40 M.J. 379, 381 n.2 (C.M.A. 1994);

United States v. Mobley, 31 M.J. 273, 278 (C.M.A. 1990); R.C.M.

906(b)(6) Discussion.  "The purpose of a bill of particulars is

to narrow the scope of the pleadings."  United States v. Paulk,

13 C.M.A. 456, 458, 32 C.M.R. 456, 458 (1963).  Moreover, if a

specification, although stating an offense, is still so

defective that the accused appears to have been misled, he may

request a continuance.  R.C.M. 906(b)(4) Discussion.  In this

case when defense counsel moved to dismiss at the end of the

Government's case, he did not complain that the defense had been

16

misled because of the absence of language alleging the conduct was prejudicial to good order or service discrediting.[6]

## II.

There are a number of legal policy and systemic questions raised by the majority opinion that are left unanswered. An opinion is not required to address all questions in all contexts that might be raised; however, where as here, the opinion represents a sea change in practice and law depending on how it is applied, additional guidance is warranted. A number of questions arise.

---

[6] The offense of larceny under Article 121, UCMJ, is a classic example of how the aforementioned long-standing principles play out. Contained in the statutory text of Article 121, UCMJ, are three alternative methods of committing the offense -- a wrongful taking, obtaining or withholding. The statute also requires that the offender harbor the specific intent to permanently deprive or defraud. Yet, since (and even before) the inception of the UCMJ, it has been permissible to simply allege in the specification that the accused "did steal." Presumably, if the accused desires specificity from the prosecution as to which "theory" of larceny is being pursued against him, he may move for a bill of particulars. Neither this Court nor any other jurisdiction where a larceny statute is derived from the common law has ever required otherwise. Apparently, the words of criminality, namely, "did steal" are sufficient to not only imply the essential element of specific intent, but also to encompass any (or all) of the three alternative means of committing the offense of larceny. Given this, it seems incongruous that this Court should hold that a specification alleging wrongful adultery pleaded under Article 134, UCMJ, is constitutionally deficient to provide notice to an accused of the criminal character of his conduct. Here, Appellant could have simply moved to require the Government to specify which alternative method under Article 134, UCMJ, was being pursued.

First, how does Fosler apply to past and present cases? Although the majority reverses appellant's conviction based on textual analysis of the particular specification, the opinion appears to implicate and question all Article 134, UCMJ, cases in which the terminal element has not been specified. If so, it has done so without indication as to how this new rule will or should apply to past cases or to cases pending in the military justice system. If a specification fails to state an offense, for example, can an accused ever be convicted of that specification, whether or not he objects to the specification? Can an accused plead guilty to a specification that does not state an offense? If so, how? Similarly, in the context of a contested case, can an accused waive the right to be tried on a specification that does not state an offense? If so, can one knowingly waive that right if counsel and accused were not aware at the time that the specification did not state an offense? And, of course, how does the writ of coram nobis apply to past cases? See United States v. Denedo, 129 S. Ct. 2213 (2009).

Second, what standing does the Manual now possess in the context of Article 134, UCMJ? Is it law? Does it bind military judges? If the Manual did not place Appellant on notice that he would have to defend against a charge of criminal adultery that was service discrediting or prejudicial to good order and discipline, then one must ask what role or standing does the

Manual retain going forward?  The question is raised because as
recounted in Part I, and in the Chief Judge's dissent, the
Manual states that "the adulterous conduct must either be
directly prejudicial to good order and discipline or service
discrediting."  MCM, pt. IV, para. 62.c.2.  Moreover,
Appellant's specification is based on the sample in the Manual.

The question is procedural as well.  Rule for Courts-
Martial 307, which is at minimum an exercise in delegated
presidential authority pursuant to Article 36, UCMJ,[7] permits
elements to be charged by necessary implication.  However, there
is no guidance from the majority as to how R.C.M. 307 applies to
Article 134, UCMJ, offenses if it does not apply in this case.
This Court has long stated that the Manual is persuasive
authority, but in recent Article 134, UCMJ, cases this Court has
not been persuaded.  It would seem that if the Commander in
Chief's constitutional authority were relevant in military
justice practice, it would be most relevant with respect to

---

[7] The text of Article 36(a), UCMJ, is as follows:

> Pretrial, trial, and post-trial procedures, including modes
> of proof, for cases arising under this chapter triable in
> courts-martial, military commissions and other military
> tribunals, and procedures for courts of inquiry, may be
> prescribed by the President by regulations which shall, so
> far as he considers practicable, apply the principles of
> law and the rules of evidence generally recognized in the
> trial of criminal cases in the United States district
> courts, but which may not be contrary to or inconsistent
> with this chapter.

Articles 92 and 134, UCMJ, which arguably are most directly related to regulating discipline in the armed forces and not just to providing a system of justice for the armed forces. Without reference to the Manual it is not clear how the President as Commander in Chief might exercise whatever authority he might inherently hold as Commander in Chief in defining the procedure and substance of military justice. And, without reference to the Manual, it is not clear how members of the military will be put on notice as to what conduct might violate Article 134, UCMJ. Certainly, the statutory elements alone do not provide such notice. But if the Manual is unpersuasive here and unpredictable in application, how then is fair notice provided?

One suspects that the issue is not one of fair notice in this case or with R.C.M. 307, but with Article 134, UCMJ, itself. Has Article 134, UCMJ, lost its capacity to serve as a predictable, and thus fair and reliable tool to uphold good order and discipline? Jones, 68 M.J. at 474 (Baker, J., dissenting). Is Parker v. Levy, 417 U.S. 733 (1974), still good law?

"[T]he military is, by necessity, a specialized society separate from civilian society." Id. at 743. And it has, by necessity, "developed laws and traditions of its own during its long history." Id. Because of the special distinctions

separating it from the civilian society, "the military has developed what 'may not unfitly be called the customary military law' or 'general usage of the military service.'"  Id. at 744 (quoting Martin v. Mott, 12 Wheat. 19, 35, (1827)).  The UCMJ "cannot be equated to a civilian criminal code," id. at 749, and with respect to Article 134, UCMJ, specifically, it "must be judged 'not in vacuo, but in the context in which the years have placed it.'"  Id. at 752 (quoting United States v. Frantz, 2 C.M.A. 161, 163, 7 C.M.R. 37, 39 (1953)).  Do these observations retain the same force and effect today as they did at the time they were made?  Is service custom and practice relevant to Article 134, UCMJ?

These questions all now appear in play.  In such a context, one might ask if the interests of justice, due process, and the significant interest in discipline in the military warrant a more holistic executive and legislative review of Article 134, UCMJ, rather than the unpredictable piecemeal adjudication of discrete issues.